## NORRIS v. CLYMER.

Devise of land in trust for A., B. and C. for life, remainder to their respective children according to appointment; and in default thereof, equally among them, with cross-remainders. A private act authorized a sale on ground-rents, redeemable or irredeemable; the trustees giving security on receipt of the money paid in redemption, to be applied according to the trusts of the will. The act is constitutional, and the court will enforce a contract of purchase from the trustees.

APPEAL from the Nisi Prius in equity.

*March* 11, 12, 13.—This was a bill by the trustees of Norris for specific performance of a contract to purchase on ground-rent, redeemable in seven years; the only question raised in the cause was the power to make title.

Joseph Parker Norris, by his will, dated in 1838, and proved in 1841, devised to trustees five-sixths of his Fair Hill estate, of which the lot in question is a part, to hold to them and the survivor in fee in trust, " to permit and suffer my five sons C., S., J., G. and H. to reside on and occupy, or at their discretion to receive and enjoy the rents, issues, and profits thereof during their respective lives, in equal shares, without impeachment for waste, in such way and manner that the same or any part thereof shall not become subject or liable to the payment of debts, present or future, of my said sons," and so that no creditor shall be able to take or 'enjoy any part, &c.; they paying five-sixths of the taxes and wife's annuity; with power to C. to settle one-sixth on his issue in such manner, for such estates, and under such restrictions as he may deem proper, and in default of appointment in trust for such children in common, or the issue of deceased children per stirpes. If C. dies without children or grand-children surviving, then over, on trusts hereafter declared for the other sons. Similar trusts and cross-remainders were limited as to the other sons. The other sixth he gave to trustees to receive rents, and after paying proportion of taxes and annuity, to apply surplus to maintenance, &c. of his son J. P. N., so as that no creditor could take or enjoy the same; remainder to his issue, according to J. P. N.'s appointment by will, and in default over, as in the limitations of the other five-sixths. Testator gave an annuity to his widow, and directed that no division of this estate should be made during her life or within five years from his decease. He then devised his Sep-viva estate in trust for his daughters; and reciting he was possessed of certain lands in Clearfield county, he authorized his executors to sell them as well as all his residuary estate.

2 A

The trustees refusing to act, two of his sons were appointed. By an act of March 2d, 1842, the trustees were authorized to sell such parts of the Fair Hill estate as they thought proper, reserving perpetual or redeemable ground-rents, and to convey, discharged of the trusts. The purchasers were discharged from seeing to the application, &c.; and any moneys paid in redemption were to be held by the trustees in trust for the uses of the will, and provided that a majority of those having vested estates should consent to the sale, and the trustees give security, &c.; a decree for defendants was entered pro formâ, and this appeal taken.

*Price*, for appellants.—The case is important from the value of the property in question; it comprises five hundred acres; the streets laid down are forty miles in length, and the income at the present rate of sale would be $200,000 per annum; but if these trustees cannot convey, it will be burdensome instead of beneficial, from the expenses of curbing, taxes, &c. It is also important from the extent of other titles involved, more than nine hundred of these acts having been passed, and many of them the foundation of hundreds of titles. Is the title such a doubtful one as the court will refuse its aid to perfect? The argument will be divided into, whether a power exists independent of the act, and therefore that is merely a shorter method; and, second, the power under the act alone. That the estates after the life-estates are remainders, and not executory devises, need not be argued, Dunwoodie *v.* Reed, 3 Serg. & Rawle, 441. Have the courts of chancery the power to authorize such a sale? if so, clearly the legislature has, for it has from time immemorial exercised that species of power. The rule is, that at law, tenants of the legal estate alone are recognised, and equity has absolute power over the trust, Lewin, 686; and the tenant for life always can part with his interest, Lewin, 138, it not being a special trust, as in Vaux *v.* Parke, 7 Watts & Serg.; 2 Cruise, 439; 2 Ashmead, 22—27; 10 Coke, 466; Fearne, 541; Coxe *v.* Blanden, 1 Watts, 535; Attorney-General *v.* Warner, 2 Swanst. 291, 302. [*Kennedy*, J.—Is the same power exercised in private trusts as in case of a charity?] The principle is the same, and Fisher *v.* Morris, 2 Ashmead, 411; Newport *v.* Cook, Id. 332, 340, 342, show the extent to which the courts here have been accustomed to go. If these were vested interests, we could have complete relief in the Orphans' Court, under act of 1836, ss. 13, 41.

The court decrees liberally, 1 Madd. C. Prac. 343, and a contingent remainder is less valuable in the eye of the law than a vested estate. They are dependent on the will of the tenant for life, and may

be barred by his recovery, 5 Cruise, 490; Dunwoodie v. Reed, antè; Lyle v. Richards, 9 Serg. & Rawle, 322, 329, 362, 363—367; Stump v. Findlay, 2 Rawle, 176; Waddel v. Ratton, 5 Rawle, 231—236. The remainders here are of the same quality as the life-estates, either equitable or legal. In either case there are the same powers and incidents; both are subject to the rule in Shelley's case, 5 Cruise, tit. 36, c. 8, sect. 9; Bridges v. Bridges, 3 Ves. 120; they are considered as if executed. Wickham v. Wickham, 18 Ves. 395; 5 Cruise, 8, tit. 36, sect. 11. Nor are perpetuities tolerated under cover of a trust, Lewin, 138; and this is a very near approach, and contrary to the policy of our law, 9 Serg. & Rawle, 331. But by joining the trustees, a common recovery certainly could be suffered. 6 Cruise, tit. 36, c. 7, sect. 45; c. 8, sect. 1. Sometimes chancery will direct the trustees to join, or not punish them if they do, 2 Cruise, tit. 16, c. 7, sect. 8, Winington v. Foley, 1 P. Wms. 536, and certainly the legislature may exercise the same discretion that a court could in directing or permitting a conveyance.

2. But has not the legislature the power, irrespective of these considerations? The cardinal rule is, that the state legislature has all the powers not prohibited by either of the two constitutions; Congress none but those given, Bosant v. ——, 9 Rob. La. R. 411, and if tenants for life could not bar remainders, the legislature might, by a general law, enable them to do so; a private act is equally powerful, 5 Cruise, 9. This court, in Harvey v. Thomas, 10 Watts, 66, says, the clause restricting the taking of property for public use, is a disabling one. [*Chief Justice.*—I think differently since that.] Menges v. Waterman, at the July term, goes as far. But the present case does not need so extensive a doctrine; but whether a conversion may be made for the benefit of the remainder-men. The only clog on the court is, that the infants' rights over the property are retained; Ex parte Philips, 19 Ves. 122, 123. The same thing was done in the Tilghman estate, and recognised here, 5 Whart. 65. So in Bonsall's Appeal, 1 Rawle, 266, without authority, when in good faith. It is unnecessary to dissect the powers of the legislature; if this be under its judicial or legislative powers, it is equally valid, Livingston v. Moore, 7 Peters, 546, 548. In Watkins v. Holman, 16 Peters, 367, and Rice v. Packenham, 16 Mass. 326, similar acts were considered and held constitutional.

So in Clark v. Vanserely, 15 Wend. 436, 439, the case of a tenant by the curtesy; and it was held not to depend for validity on the doctrine of the omnipotence of parliament. Our own law relative to mechanics' lien is equally objectionable; for it destroys all estates;

O'Conner *v.* Warner, 4 Watts & Serg. 226; and in Savoy *v. Jones,* 2 Rawle, 350, an act of a tenant for life caused a sale of the fee, according to the decision of this court. [*Curiam.*—If that was wrong, so are all sales for taxes.]—The legislature also destroyed survivorship in joint-tenancy, which might in a certain case have been very unjust, 11 Serg. & Rawle, 193; 4 Mass. 566, is also on the constitutionality of the law. The whole course of our legislation is opposed to upholding such estates; thus the constitution of 1776 directs laws to be passed for this purpose. The uniform practice has been to uphold titles under these acts, as is shown from their number, and great respect is due to that, Blythe *v.* Richards, 10 Serg. & Rawle, 265; and this usage settles the construction as it existed before, and since the framing of all our constitutions, Colwin *v.* Bull, 3 Dall. 386, 398. Such a power must exist somewhere, 2 Story, Eq. sect. 333, 351. In Estep *v.* Hutchinson, 14 Serg. & Rawle, 435, 438, a sale by guardian, with notice, under a private act, was sustained here. So this court has always recognised the power to cure defects in conveyances, as in Mercer *v.* Watson, 1 Watts, 356; Salterlee *v.* Mathewson, 16 Serg. & Rawle, 169; affirmed in 2 Peters, 380, 413, which in fact divested rights, but was sustained because no clause in the Constitution prohibited it.

Is this then a doubtful case. I submit it on the cases, and the uniform practice; but if there be a doubt, it is to be thrown into the scale in favour of the right of the legislature; this is the uniform language of the judges. Cooper *v.* Telfair, 4 Dall. 219. [*Kennedy,* J.—You need not argue that.] That was the ground taken in Bomberger *v.* Clippenger. [*Curiam.*—Cases are unnecessary as to the rules in equity; for this title is either undoubtedly good or bad.]

*F. W. Hubbell,* contrà.—The will is recent; all the facts now urged were before the testator; so that the question is, can the legislature make a new will? It is conceded, that to sustain the objection to the law as unconstitutional, the prohibition must be found in that instrument; this distinction, as to the powers of Congress and the state legislature, is a familiar principle. Butler *v.* Hill, 1 Hill, N. Y. 324; Braddee *v.* Brownfield, 2 Watts & Serg. 285. I shall not argue from implication, as from the division of power into legislative and judicial; for that was put an end to in the Convention, 1 Deb. Penna. Con. 479. So in Braddee *v.* Brownfield, it is held, this sort of superior equitable jurisdiction has always been exercised by the legislature. So in Livingston *v.* Moore, 7 Peters, 548, it is said this power, if not delegated, remains with the legislature.

But we find express prohibition in the constitution, in the Bill of Rights, sects. 1, 6, 9, 10, every article of which is excepted out of the powers of the legislature; but there are restrictions even more elementary than these, as the right to acquire means of subsistence, rights of conscience, &c. The 9th section declares a man shall not be deprived of his property but by the judgment of his peers, or the law of the land. This law interferes with that most sacred right of disposition: one of the strongest inducements to acquisition. It moreover takes away the rights of the unborn remainder-men, nor is an equivalent given, for that must be equal in value to the thing taken, at the time of enjoyment, which is not pretended here. It is moreover impossible to retain the incidents of real estate and attach them to the money paid in redemption of the rents; and these are material, especially in case the heirs should be women. The voluntary restraints on passing private acts in England are shown in 5 Cruise, tit. 33, sect. 21, which are modes of barring rights. If they are against common justice they are void, 1 Bay. 93. So in Norman v. Heiss, 5 Watts & Serg. 171, it is said, the legislature cannot give the property of A. to B. with or without compensation. The principle of this case is sufficient. And the same is said in Bomberger v. Clippinger, 5 Watts & Serg. 311. In private acts none but parties are bound; here many are not parties nor represented. That the courts possess the power to declare an act void is settled, Eakin v. Raub, 12 Serg. & Rawle, 330, though it is said it must be a very clear case. [*Chief Justice.*—I have changed that opinion for two reasons. The late Convention, by their silence, sanctioned the pretensions of the courts to deal freely with the acts of the legislature; and from experience of the necessity of the case.] Vanhorn v. Dorrance, 2 Dall. 304; Austin v. The Trustees, 1 Yeates, 260. In Catlin v. Jackson, 8 Johns. 520, a private act authorizing a sale was held not to affect one having title, but not a party, S. C. 2 Johns. 262; in Jackson v. Lyons, 9 Cow. 664, the line of descent was changed; Lewis v. Webb, 3 Greenl. 326; Holding v. James, 11 Mass. 396, particular individuals were excepted from a general law; Durham v. Lewiston, 4 Mass. 140, requiring a review of a suit at law; Jones v. Perry, 10 Yerg. 59, an authority to guardians to sell to pay ancestors' debts; Stanford v. Barry, 1 Aik. Vt. Rep. 314, special enlargement of time for appeal; 1 Blackf. 206, an infringement of the right of trial by jury; Elwood v. Page, 2 Scam. 467, usurpation of ordinary judicial functions—are all cases in which the courts have pronounced the law of the legislature unconstitutional and void. It is conceded the legislature cannot transfer the property of one man to another, yet this is the case here. Menges v. Waterman affords a key to

the cases cited for the doctrine contended against. They are of three classes. 1. Validating informal acknowledgments, as in Barnet *v.* Barnet, 15 Serg. & Rawle; Tate *v.* Stoolfoos, 16 Serg. & Rawle; Mercer *v.* Watson, 1 Watts. 2. Imposing the ordinary obligation of a tenant on one coming in under a Connecticut title. 3. Cases of infants, lunatics, and sales for payment of debts. All these are cases in which there was a moral obligation to permit the acts to be done.

I was surprised at hearing the legislature had done nothing but what the courts would do. With them the equitable estate is the real interest, and these may not be forfeited. No conveyance beyond the real interest is sustained. Lyle *v.* Richards, and Dunwoodie *v.* Reed, per Gibson, C. J. Fearne, 321, sect. 5. Tenant in tail may, because he could call in the legal estate. But here the estates are carefully kept separate, and under Vaux *v.* Parke, 7 Watts & Serg. 19, the tenant for life could not convey. The cases of charities are on a peculiar footing; the beneficiaries are uncertain—belonging to a class constantly changing. Infants and lunatics are on the prerogative, and that power was disclaimed in Whitman *v.* Lex. But this is not a case in which chancery would compel the trustees to join in a conveyance. Those are few and peculiar. Fearne, 326, sect. 10, where the mere naked outstanding legal estate prevents the real owner from having a perfect fee. Fearne, 336, 331.

*Meredith,* in reply.—Without doubting the broader principle, there is sufficient here on narrower ground. There is no use limited to the trustees, hence the estate is vested; for though the statute has been held not to apply, yet the courts execute them under the same rules. The trust to permit A. to receive the rents in a devise is executed, 2 Saund. U. & T. 195; Vaux *v.* Parke decided the son was not a cestui que use of the land. This act, then, does nothing more than the parties could do by fine and recovery; or if the estates are equitable the remainders are so also, and cannot vest, Saund. 187, Brydges *v.* Brydges, 3 Ves. 120 on Chudleigh's case; and Bagshaw *v.* Spencer, 1 Ves. 140.

It being conceded the power to compel a conveyance of the legal estate can be exercised, the act has only dispensed with a recovery of that or of the equitable estate, or has exercised the power of a court of chancery. · The despotic power of the legislature is not contended for. [*Chief Justice.*—I doubt whether a court would do it here.] The only right contended for is of conversion; the remainders are not sought to be disturbed. Menges *v.* Waterman settles it. As to the power to pass private acts, there will be found two, under which Chief Justice

Shippen and Chief Justice Tilghman, and several under which members of the present judiciary have acted. The same power exists in the Orphans' Court. [Mr. *Hubbell* here cited Hopkins *v.* Hopkins, 1 Atk. 591, 594, showing that equity will not permit a fee to be gained by forfeiture of an equitable life-estate. Smith on Ex. Int. 448; Fearne, 304, showing that the present trust will support the contingent remainders.] This rule is not denied, but it rests on a mere assumption of a rule, contrary to the principle that an equitable estate has all the incidents of the legal. And it may be doubted whether our common law has not given the same powers and incidents to the equitable owner that the legal estate possessed, as in Willing *v.* Brown, 7 Serg. & Rawle, 467, where it was decided they might sue in partition.

There is no clause in the Constitution of the United States violated, as no contract is impaired, nor the similar one in our own. But it is said the Bill of Rights prohibits this act. The first section is abstract, incapable of being enforced by the courts. As to the sixth section, no right to a trial ever existed. The ninth section evidently refers to accused persons, and has no bearing on this case. Of the tenth section, the first part relates to criminal proceedings, and the latter to a matter different from the present. None of these interfere with this prerogative of parliament, to which the legislature has succeeded, in passing an act for the preservation of property, which this is. [*Chief Justice.*—The expression in 10 Watts, 63, Harvey *v.* Thomas, was inadvertently used.] The constitution must be construed with reference to that lex non scripta, the law of custom, which has always prevailed. Thus, in case of divorce, which is a contract, a special prohibition was required. So of insolvent and limitation laws, of which the real ground is not that the remedy only is impaired, for if all remedy is taken away, clearly the contract is impaired; but that these laws had always been enacted, and no one thought of prohibiting them. There is nothing which prohibits the entire destruction of contingent remainders. Numerous cases show the power to sell, even without security, has been given to strangers, or persons having but particular estates. I would not contend for the extreme case of taking one man's property and giving it to another. The evils prohibited were practical ones, under which the people had suffered, such as attainders. We have then uniform practice sanctioned by the highest names in the judiciary, and uniform legislation. If it cannot be done, the city must stand still. This estate on the north, Powelton on the west, Blackwell and Wharton's estate on the south, hem us completely in, and for half a century the growth of the city must be stopped to protect contingent remainders.

*March* 21. GIBSON, C. J.—The argument that the legislature has done no more, by this statute, than a chancellor would do by decreeing the trustees to join in a conveyance to destroy contingent remainders, is plausible but unsound. Such a direction would doubtless be given where the consequence would be a plain benefit to the family, (and the direction which the legislature has given to this property is certainly more beneficial to the family than that which had been given to it by the testator,) but I am unable to perceive how the contingent limitations could be defeated by a fine, recovery, feoffment, or any conveyance which, on feudal principles, would work a forfeiture of an estate for life. Trustees, to support contingent remainders, take the estate in remainder for the life of the particular tenant, after the determination of his freehold by forfeiture; and they may still defeat the dependent remainders as he would have done, by destroying their own freehold, when nothing else is left to support them. Here the trustees have had the legal estate in fee from the beginning; and no conveyance of theirs could extinguish it by forfeiture for an attempt to create one of no more than equal magnitude. With or without the decree of a chancellor, therefore, they could not have destroyed their own estate; and they consequently could not have destroyed the contingent limitations dependent on it. They might have conveyed it; but not being extinct, it would have performed the same office in the hands of their grantee.

But the constitutionality of the act stands on much safer ground than a chancery power unseparated from the other powers of the government, and reserved to the legislature. It stands on the notions of parliamentary power, brought by our forefathers from the land of their birth, and handed down to their descendants unimpaired, in the apprehension of any one, by constitutional restriction of ordinary legislation. A list of nine hundred statutes, in principle like the present, has been laid before us; some of them enacted at the instance of judges of this court; some at the instance of law judges of the Common Pleas; and some at the instance of learned and eminent lawyers, most of whom executed trusts under them without suspecting that their authority was prohibited by the constitution. It is not above the mark to say that ten thousand titles depend on legislation of the stamp. For many of those statutes contain distinct provisions for more than twenty estates. And could not the ruin that would be produced by disturbing them be avoided by any thing less than a convention to effect a constitutional sanction of them, the consummation would not be dearly bought. Fortunately there is no need of a measure so grave. Many of the pre-eminent men who framed the constitution of 1790, in which it was first

attempted to impose specific restrictions on the power of the legislature over property, were returned as members in the succeeding years; and we find no opposition to such enactments on constitutional grounds. This remedial legislation has prevailed from the foundation of the province to this day, not, indeed, exactly as it has prevailed in England, where, though the power of parliament is absolute, statutes which infringe upon private property are enacted with extreme caution, yet certainly with caution enough to prevent any sacrifice of private right. In the ten thousand cases to which I have referred, there is not, perhaps, one by which an individual was prejudiced, while it is almost entirely certain that all were benefited. In those instances the legislature was not adverse but subservient to the protection of vested estates; and due care was taken to provide for the security of contingent ones. On what part of the constitution, then, could it be supposed to trench? The only restrictive clauses which could be supposed to reach it, even by the most forced construction, are found in the ninth and tenth sections of the declaration of rights, in which it is said that no one " can be deprived of his life, liberty, or property, unless by the judgment of his peers, or the law of the land." " Nor shall any man's property be taken or applied to public use without just compensation being made." Now, it cannot be said that this statute has deprived any man of his property, or applied it to any other use than his own. The estate is to remain in the trustees; altered, indeed, as to kind, but still applicable to the trusts in the will. It is to be let on perpetual or redeemable ground-rents at the option of the trustees, who are to give such security as the judges of the Common Pleas may require for the due investment of such parts of it as may eventually be turned into money by redemption. Now, as the constitution allows to the legislature every power which it does not positively prohibit, I am at a loss to perceive, in these or any other of its clauses, an ascription of such sanctity to testamentary directions, as to exclude the interference of the legislature with regulations merely modal, for the advancement of interests both private and public. By a due execution of the powers conferred by this statute, not only will the welfare of the family, but the extention of the city be promoted. It would be fraught with incalculable mischief to let a doubt rest on the power of the legislature; and we are entirely clear that the relief sought by the bill be granted.