## County of Cumberland *versus* Boyd et. al.

113    52
210    1392
113    52
29 SC  1354
113    52
216    28

1. In construing a statute, the previous law, the supposed evil, the remedy desired, the language of the statute and the fair and reasonable import thereof must be considered. The views expressed by members of the Legislature on its passage cannot be adopted as the true interpretation of it.

2. The Act of May 8th, 1876, P. L. 154, entitled: "An Act to suppress Vagrancy," is not repealed by the Act of April 30th, 1879, P. L. 33, entitled "An Act to define and punish tramps."

3. The regularity of a judgment rendered by a Justice of the Peace, in a matter over which he has jurisdiction cannot be questioned in a collateral proceeding.

4. In the absence of fraud a record cannot be impeached and contradicted by parol evidence.

May 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J. absent.

ERROR to the Court of Common Pleas, of *Cumberland county:* Of July Term, 1885, No. 47.

This was a feigned issue in the form of debt wherein the County of Cumberland was plaintiff and Hugh Boyd, Samuel Eppley, and A. B. Stroek were defendants. Plea *nil debet.*

The following are the facts as they appeared on the trial of the issue:

The defendants were during the year 1884 commissioners of Cumberland county. The county auditors in auditing the commissioners' account for that year charged them with the sum of $229, being the amount paid on their orders, out of the county treasury, to three justices of the peace in the borough of Carlisle for the commitment of vagrants to the county jail. From this the commissioners appealed. The county of Cumberland petitioned the Court to direct an issue to determine the liability of the county commissioners for the said sum charged against them by the county auditors. This issue was directed as above set out.

The commitments were made under the vagrant law of May 8th, 1876. The bills presented by the justices and paid by the defendants were in the form following: Those of Squire Martin, "Cumberland county to J. B. Martin to committing vagrants, Jan. 1st, 1884, Com. *v.* Sue Osborne, com. to jail at hard labor for 30 days, Fem. 25." Then follows the list of the names of vagrants, the dates, etc., as in the first line, and at the foot of the bill the following certificate: "I hereby certify the above is a correct manuscript, etc., of my docket. Wit-

ness my hand and seal this 31st day of January, A. D. 1884, J. B. Martin, J. P." Those of Squire Green, "Cumberland county to Jas. A. Green to hearing and committing the following persons to jail at hard labor as vagrants. April 1st, 1884, hearing and committing John Rodgers, (cripple) 30 days to jail. 25." Then follows the list of names, etc., as in the first line, and at the foot of the bill the following certificate: "I certify the above to be a true copy of the costs in the above cases. Jas. A. Green, J. P." Those of Squire Ramsey, "Carlisle, Sept. 4, 1884. Commissioners of Cumberland county, Dr. to T. H. Ramsey, J. P. July 16, 1884, John Timpson, vagrant, 30 days to jail, cripple. 25." And at the foot of the bill the following certificate: "I certify that the above is a correct transcript taken from my docket and proceedings in the above cases. T. H. Ramsey, J. P." The records made and kept by the justices were in form as follows: Those in Squire Martin's docket. Down the left hand side of the page was "Cumberland county ss. Com. *v.* Sue Osborne, 1884, Jan. 1, Fem," and a list of twenty-three other names, more or less, one below the other, and a line drawn down the middle of the page, then on the right hand side of the page "Defendants were convicted before me one of the Justices of the Peace of vagrancy upon their own conf. Be it remembered that on Jan. 1, 2, 3, 4, 5, and 7, the dates set opposite each name, said Def. were convicted before me one of the Justices of the Peace in and for said county of vagrancy contrary to an Act of Assembly, sentenced them to jail at hard labor for 30 days each." The name of the justice was not signed and did not appear anywhere. Those in Squire Green's docket "Be it remembered that I committed and convicted ("and convicted" being interlined) the following persons to the county jail at hard labor as vagrants on their respective dates and for the causes therein named and to the Almshouse, Sept. 1, 1884, Aug't. Carson, 30 days, cripple, jail." Then follows line after line the list of vagrants. Those in Squire Ramsey's docket "1884 commitments for vagrancy on their own confessions to county jail at hard labor 30 days (30 days being interlined) by T. R. Ramsey, J. P., Oct. 5, Henry Maloy, sick. 25." Then the list of vagrants. The court upon the trial permitted the justices, under objection, to testify that in each of the cases of vagrancy there had been a conviction and commitment, and allowed the defendants, under objection, to give evidence as to the care they had exercised in the payment of these bills, and of their good faith in the matter.

The plaintiff presented, *inter alia*, the following points:

1. The Act of Assembly of 8th May, 1876, entitled "An Act to define and suppress vagrancy" was repealed by the

[County of Cumberland *v.* Boyd et al.]

Act of 30th April, 1879, entitled "An Act to define and punish tramps." Therefore there was no authority in law for the justices of the peace to convict and commit the persons to jail as vagrants under the former statute as in these cases, and consequently no liability on the part of the county to pay the fees of the justices for so doing, and the verdict of the jury should be for the plaintiff for the amount claimed.

Answer.—This point is refused. We do not think the tramp Act repeals the vagrant Act. (First assignment of error.)

2. The Act of Assembly of 21st April, 1866, prohibits the commissioners of Cumberland county from granting any order or orders on the treasurer of said county for the payment of any fees for the arrest or commitment of any vragrant out of the county money; therefore the granting of the orders by the defendants in this case was unauthorized by law, and the verdict of the jury should be for the plaintiff for the amount claimed.

Answer.—This Act was repealed by that of 8th May, 1876, entitled "An Act to define and suppress vagrancy." The latter Act provides for the payment of fees for the conviction and commitment of vagrants. (Second assignment of error.)

3. The writings made and kept by Squires Green, Ramsey and Martin, and offered in evidence in this case are not such records as the law requires in cases of vagrancy; the said justices of the peace were therefore not entitled to the fees paid to them, and the defendants should not have granted their orders upon the treasurer for the payment of the same, and the verdict of the jury should be for the plaintiff for the amount claimed.

Answer.—This is true of that part of those kept or alleged to have been kept by justice Green from January 1st, 1884 to September 1st, 1884; but we cannot so affirm as a matter of law as to the writings or records kept by Martin, Ramsey and Green after September 1st, 1884. The jury will determine ·from these writings or records, and the testimony in the case, whether the persons named and for the hearing and commitment of whom fees are claimed had in fact a hearing, and were duly committed as alleged by the defendants to the county jail in accordance with the provisions of the Act of 8th May, 1876.

The reason we exclude generally Mr. Green's bills from January 1st, 1884, to September 1st, 1884, is because he has testified that the only record he kept was one similar to a paper marked "A." That paper in no way indicates that the parties charged with vagrancy were committed to the county jail at hard labor, and under a decision rendered in your hear-

ing no fees ought to have been collected by justice Green from the county on such a record. (Third assignment of error.)

4. The matter of good faith on the part of the defendants does not enter into this case at all; it cannot affect their liability to the plaintiff, and the evidence upon that subject should not be considered by the jury.

Answer, Good faith on the part of the defendants of itself would not excuse a payment by the defendants unauthorized by law, and you will not regard in the consideration of this case any evidence given by the defendants examined, or on their behalf by their attorney or clerk, who were also examined, which simply tended to show that they did not pay the bills from a corrupt motive, but only upon the belief that they were just, and the payment proper, and all such testimony is withdrawn from your consideration; but you may consider in the determination of the case, in addition to the records offered in evidence, the testimony submitted by them which tends to show that prior to the payments of the bills in question they examined the same, submitted them to their attorney, and had him make an examination of the records of the justices alluded to as to their liability to pay the same, and what his advice subsequently was; and if you find such to have been proven, because there seems to have been some discrepancy between the testimony of the defendants themselves and of their attorney as to this point, and also that they compared the bills of the justices with those rendered by the constables, as well as the records of the jail and made a count also of those in the jail to see if the names and numbers corresponded with those for which the justices claimed fees for the commitment of, as well as all other evidence tending to show that after a full examination it would have appeared to an intelligent person exercising that extraordinary degree of care required of paid agents that the justices had actually rendered the services for which payment was claimed from and made by the defendants to them. (Fourth assignment of error.)

5. Under the evidence in this case the verdict of the jury should be for the plaintiff and against the defendants for the amount charged against them by the report of the county Auditors, to wit: the sum of $229.00, with interest from February 3d, 1885, the date of the filing of said report.

Answer.—We cannot affirm this point except as to the bills of justice Green from January 1st, 1884, to September 1st of the same year, to wit: $48.75, which bills show no such commitment as is provided for in Act of 8th of April, 1876. As to the remainder you will determine under the law as given in the answers to the other points presented, and in the general

charge as applied to the facts of the case, whether a recovery to the extent prayed for should be had. (Fifth assignment of error.)

The admission of the evidence of these justices, that in each of the cases of vagrancy there had been a conviction and commitment was also assigned for error.

The admission of the evidence of the defendants as to the care they had exercised in the payment of these bills and of their good faith in the matter was also assigned for error.

Verdict for the plaintiff in the sum of $48.75. Judgment was duly entered upon the verdict, whereupon the plaintiff took this writ assigning for error, *inter alia*, the answer of the court to the plaintiff's points and the admission of evidence as above shown.

*Edward B. Watts*, for plaintiff in error:—1. Was the Act of 8th May, 1876, entitled "An Act to define and suppress vagrancy" (Pamphlet Laws, p. 154), repealed by the Act of 30th April, 1879, entitled "An Act to define and punish tramps" (Pamphlet Laws, p. 33)? When a new statute covers the whole subject matter of an old one, and adds offences and prescribes different penalties from those enumerated in the old law, it is by necessary implication, a repeal of the former statute: Potter's Dwarris on Statutes, p. 157 (note); Norris *v.* Croker, 13 Howard, 429. But the new statute in this case repeals in express terms "all Acts or parts of Acts inconsistent herewith." If the intention of the Legislature be sought, it will appear that it meant to repeal the old law. Senator Wolverton, on page 1246 of Legislative Record of 1879, part 2, says, in discussing the tramp law then under consideration: "If for no other purpose, I would vote for this bill; it has a repealing clause in the sixth section which repeals this iniquitous stone pounding Act" (meaning the Act of 1876.) Senator Hall, on page 1249: "We repeal the Act of 1876, whether we pass the Act with the amendment of the senator from Chester or whether we pass it without. In either case we repeal the Act of 1876."

2. In 1866 a local law was passed which prohibited the commissioners of Cumberland county from granting any order on the treasurer for the payment of any fees for the arrest or commitment of any vagrant out of the county money. The Court instructed the jury that this law was repealed by the vagrant Act of 8th May, 1876. "It is against reason to suppose that the Legislature in framing a general system for the State, intended to repeal a special Act which the local circumstances of one county had made necessary": Sigfred *v.* Commonwealth, 12 W. N. C., 380; Brown *v.* Commissioners, 9

Harris, 37; Bounty Accounts, 20 P. F. S., 92; City of Harrisburg v. Sheck, 14 W. N. C., 280; Kilgore v. Commonwealth, 9 W. N. C., 184. "A thing given in particular shall not be taken away by general words": Johnson v. United States, 3 McLean, 89; Id., 469.

3. The county stands in the position formerly occupied by the king, in whose name criminal actions were prosecuted. He paid no costs. It is only because the statute in some cases imposes costs upon the county that it must pay them. Such a law, however, must be strictly construed: Cumberland County v. Holcomb, 13 Casey, 349. County commissioners have no discretionary power in the matter of costs. They are not technical trustees; they are ministerial officers, and they must perform the duties of their office as the law prescribes. If they go beyond this, particularly in the payment of costs, they do it at their own hazard. They are personally liable for costs paid by their direction, before the county has become legally fixed for their payment: Commissioners v. Lycoming County, 10 Wright, 496.

4. Parol evidence is inadmissible to contradict or vary the entries on a justice's docket: Coffman v. Hampton, 2 W. & S., 377; Williams v. McNeal, 3 Luz. L. Reg., 37. Parol evidence is not admissible to explain an ambiguity in an Auditor's report duly confirmed: Stecher v. Commonwealth, 6 Whart., 60.

*A. B. Sharpe, M. C. Herman, H. S. Stuart,* for defendants in error were not heard.

The opinion of the Court was filed May 24th, 1886.

PER CURIAM. There is no error in this record to give the plaintiff just cause of complaint. In giving construction to a statute we cannot be controlled by the views expressed by a few members of the Legislature who expressed verbal opinions on its passage. Those opinions may or may not have been entertained by the more than a hundred members who gave no such expression. The declarations of some and the assumed acquiescence of others therein, cannot be adopted as a true interpretation of the statute. Keeping in mind the previous law, the supposed evil and the remedy desired, we must consider the language of the statute, and the fair and reasonable import thereof. Thus examining the Act of 1879 we do not think it repealed the Act of 1876.

The records of the justices of the peace were very irregularly and imperfectly kept; yet they had jurisdiction of the parties and of the subject matter, and no party to the record made any objection thereto. The regularity of a judgment rendered by a justice of the peace in a matter over which he has un-

doubted jurisdiction cannot be questioned in a collateral proceeding: McDonald *v.* Simcox, 98 Pa. St., 619. In the absence of fraud a record cannot be impeached and contradicted by parol evidence.

Judgment affirmed.