516 A.2d 306

**Ruth V. SMITH, Administratrix of the Estate of Harry F. Smith, Deceased and Rita Ladzensky, Administratrix of the Estate of Gerald Ladzensky, Deceased and Charles Alexander Scott, Appellees,**

v.

**CITY OF PHILADELPHIA and Philadelphia Gas Works and Philadelphia Facilities Management Corporation, Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1986.

Decided Oct. 3, 1986.

130

Ruth Rudbarg Wessel, E. Parry Warner, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, for Philadelphia Gas Works and Philadelphia Facilities Management Corp.

Barbara R. Axelrod, Deputy City Solicitor, Philadelphia, for City of Philadelphia.

Charles W. Craven, Philadelphia, for amicus curiae City of Allentown.

David F. Binder, Philadelphia, for Ruth V. Smith and Rita Ladzensky.

Theodore A. Schwartz, Philadelphia, for Charles Alexander Scott.

Andrew S. Gordon, Sr. Deputy Atty. Gen.

Herman Bloom, Philadelphia, for the O'Farrells.

Stanley P. Stern, Philadelphia, for Maslanys.

John F. Lewis, Philadelphia, for Genevieve Misko.

Joseph I. Fineman, Robert P. Corbin, Philadelphia, for Mysyzyn and Dunas.

Lawrence G. Metzger, Philadelphia, for the Ditros.

Harry L. Clark, Philadelphia, for Munford and Haskins.

John P. Pucci, Philadelphia, for Philadelphia Elec. Co.

Lee Mandell, Philadelphia, for Gregory Williams.

Thomas J. Mettee, Philadelphia, for Miroslav Smatana.

William T. Steerman, Philadelphia, for Juan Cancellieri.

Ralph D. Friedman, Jenkintown, for Charles Wyse.

Albert W. Sheppard, Jr., Philadelphia, for Annalee Nelson.

Gerald Solverman, Philadelphia, for Irene R. Nichols.

T. Jonathan Hankin, Philadelphia, for Stanley Piotrowski.

Louis Matkoff, Philadelphia, for Donald and Annabelle Scott.

Reginald H. Holder, Philadelphia, for Herbert Summers.

Ronald A. Smith, Philadelphia, for Earl J. Weiser.

Jerome Gamburg, Philadelphia, for Joseph Conley.

Joan Gerson, Philadelphia, for SEPTA.

Richard C. Glazer, Philadelphia, for General Acc. Group, et al.

E. Douglas Sederholm, Philadelphia, for Stanley L. Krajewski, et al.

Raymond Quaglia, Philadelphia, for Henry Demtschuk, et al.

Joseph J. Witiw, Warminster, for Raymond Londer, et al.

Thomas F. Wilson, for Geo. and Cynthia Martin.

Thadeus J. Bartkowski, Philadelphia, for Borecki and Sucharski.

Dennis E. Haggerty, Philadelphia, for Elaine May Brown.

E. Harris Baum, Philadelphia, for Robert Carpino.

Barry H. Oxenburg, Philadelphia, for Wm. C.T. Clarke, III.

Robert J. Murphy, Towanda, for Kahrklin and Serici.

F. Emmett Ciccone, Philadelphia, for Edmund Kasiewski.

James F. Mundy, Philadelphia, for Sophia Conrad.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Section 8553 of the Political Subdivision Tort Claims Act, Act of October 5, 1980, P.L. 693, No. 142 § 221(1), as amended, 42 Pa C.S.A. § 8553, limits recovery of damages against political subdivisions of the Commonwealth to $500,-000 in the aggregate for legally cognizable tort injuries arising from the same transaction. The question in this case is whether this limitation is constitutionally permissible.

On May 11, 1979 a gas explosion in the Bridesburg section of Philadelphia killed seven persons, injured many others, and caused extensive property damage. Forty-four separate actions on behalf of seventy-two claimants were filed for property damage, death and personal injury. After their initial tort claims had been filed, Ruth V. Smith and two other plaintiffs filed a declaratory judgment action seeking a declaration that the Political Subdivision Tort Claims Act is unconstitutional in its limitation of damages to an aggregate amount of $500,000.

Plaintiffs also moved for summary judgment in the declaratory judgment action. The Court of Common Pleas of Philadelphia granted the plaintiff's motion for summary judgment and held that the provision of the Political Subdivision Tort Claims Act, which limits damages to an aggregate amount of $500,000, violates Art. III, Section 18 of the

Pennsylvania Constitution, Article III, Section 32 of the Pennsylvania Constitution, and the Fourteenth Amendment to the United States Constitution.

A direct appeal to this Court was taken pursuant to 42 Pa.C.S.A. § 722(7). For the reasons that follow, we reverse.[1]

## I

### CONSTITUTIONAL AUTHORITY TO LIMIT TORT RECOVERY AGAINST THE COMMONWEALTH

The statute in question, 42 Pa.C.S.A. 8553(b), the Political Subdivision Tort Claims Act, provides:

Amounts recoverable—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.

Article I, Section 11 of the Pennsylvania Constitution provides, in pertinent part:

Suits may be brought against the Commonwealth in such *manner*, in such *courts* and in such *cases* as the Legislature may by law direct.

(Emphasis added). The Court of Common Pleas determined that although the Legislature has the power to regulate the *manner*, the *courts* and the *cases* which may be brought against the Commonwealth,[2] it has no power to limit the *amount of damages* which may be recoverable in a particular case.

1. Various procedural objections have been raised concerning the propriety of trial court's issuing a declaratory judgment in a case in which there was already pending another action for damages arising from the same transaction. Because the interests of judicial economy are best served by our addressing the merits of the case now, rather than after forty-four judgments have been rendered and the same issue is raised on appeal, and because the parties are better served by an early determination of the constitutional question, we address the merits of the constitutional questions presented.

2. In *Carroll v. County of York,* this Court stated that the term "Commonwealth" encompasses political subdivisions. 496 Pa. 363, 366, 437 A.2d 394, 396 (1981).

The lower court also held that Article III, Section 18 prohibits any legislative limitation on damages in cases brought against the Commonwealth or its political subdivisions. Article III, Section 18, in pertinent part, provides:

[Other than workmen's compensation] in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property....

Since this is a case other than a workmen's compensation case, the Court of Common Pleas reasoned that the General Assembly had no authority to limit the amount to be recovered for injuries to persons or property.

■ We begin our review of the lower court's holding by observing, as mentioned earlier, Article I, Section 11 of the Pennsylvania Constitution permits the legislature to regulate the manner, the courts and the cases in which suits may be brought against the Commonwealth. In granting the legislature power to control not only the cases, but also the manner and the courts in which cases against the Commonwealth may be brought, the Framers intended that the legislature have complete control over suits brought against the Commonwealth. Plaintiffs agree that the legislature has complete control in that it could abolish altogether the right to recover against the Commonwealth in tort actions, but they assert that the legislature has no power to limit the amount of recovery in actions which it has said may be brought. We disagree. If the legislature may abolish a cause of action, surely it may also limit the recovery on the actions which are permitted. To hold otherwise would be, in our view, to grant with one hand what we take away with the other. Such a result would be absurd, or at least, unreasonable.[3] We conclude, therefore, that Article I, Section 11 should not be read to prohibit the

---

3. Absurd, impossible or unreasonable results are not favored by the Statutory Construction Act, 1 Pa.C.S.A. § 1922, the general principles of which have been applied to questions of constitutional as well as statutory interpretation. *Montgomery v. Martin*, 294 Pa. 25, 143 A.2d 505 (1928).

Legislature from enacting a limit on the tort liability of its political subdivisions.

In addition, we disagree with the Common Pleas Court's conclusion that Article III, Section 18 prohibits the statutory limitation of damages against the Commonwealth or its subdivisions. As this Court stated in *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975), "the full scope and meaning of [Article III, Section 18] should be considered ... in light of the evil intended to be remedied by its adoption." *Id.*, 464 Pa. at 396, 346 A.2d at 901. Article III, Section 18 [4] was drafted in 1872 and 1873, and adopted in 1874 in response to the fact that certain powerful private interests had been able to influence legislation which limited recovery in negligence cases filed against them.

In particular, the Framers were reacting to the passage of the Act of April 4, 1868, P.L. 58, which limited recoveries in negligence actions against railroads and other common carriers. II *Debates of the Convention to Amend the Constitution of Pennsylvania,* 742–44 (1873). *See also* White, *Commentaries on the Convention to Amend The Constitution of Pennsylvania* (1907). The corporations who effected this legislation were perceived by the Framers as a privileged and powerful class of overreachers who had purchased special, self-serving legislation, and Article III, Section 18 was meant to prevent such powerful private interests from unduly affecting the legislative process. Consideration of the full scope and meaning of Section 18, therefore, reveals that the Framers were addressing themselves to private, not governmental defendants.

It has been argued, however, that the language of Article III, Section 18 applies to all cases, not merely those involving private defendants ("in no other cases shall the General Assembly limit the amount to be recovered") and that the section should not be construed as applicable only to private

---

**4.** Except for an amendment in 1915 exempting workmen's compensation laws from the requirement that recoveries not be limited, and the renumbering of the section in 1967, Section 18 has remained unchanged.

parties. This argument ignores that the Framers would have had no occasion to apply the prohibition against limiting damages to government, for government, at that time, was immune from suit. It was not for more than 100 years after this provision was drafted that this Court in *Mayle v. Pennsylvania Depart. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) abrogated common-law sovereign immunity.

We conclude, therefore, both because the intended scope of this section was to prevent *private parties* from securing an unfair limitation of liability through influence in the General Assembly, and because the Framers would have had no reason to concern themselves with governmental liability in tort, that Article III, Section 18 does not operate to restrict the General Assembly from providing for less than full recovery for injuries to persons or property where the defendant is a governmental entity.[5]

## II

## EQUAL PROTECTION

Even though we have determined that the statute does not exceed the power granted to the Legislature in Article I, Section 11 or Article III, Section 18 of the Pennsylvania Constitution, plaintiff-appellees contend, nevertheless, that the damage limitation violates the Equal Protection Clause of the United States Constitution and Article III, Section 32 of the Pennsylvania Constitution. The Equal Protection Clause, in pertinent part, provides:

No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

---

**5.** Our holding in this case is reinforced by the fact that "An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution." *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963) (Emphasis in original). *See also James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984). Moreover, any uncertainty as to the constitutionality of a statute must be resolved in favor of its validity. *Milk Control Commission v. Battista,* 413 Pa. 652, 198 A.2d 840 (1964).

Article III, Section 32 of the Pennsylvania Constitution provides:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law....

This Court has determined that these provisions, federal and state, have "meaning and purpose sufficiently similar to warrant like treatment." *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 67 n. 13, 436 A.2d 147, 155 n. 13 (1981).

The claim here being asserted, in essence, is that because there is a $500,000 limit on recoveries in tort cases filed against political subdivisions of the Commonwealth, but there is no such limit against private parties, or even against the Commonwealth itself, where the limit is $1,000,-000,[6] the damages limitation provision of the Political Subdivision Tort Claims Act is violative of the Fourteenth Amendment's requirement of equal protection of the laws.[7]

Most recently in *James v. SEPTA*, 505 Pa. 137, 477 A.2d 1302 (1984), we observed that the Fourteenth Amendment does not absolutely prohibit the states from classifying persons differently and treating the classes in different ways. As this Court stated in *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. at 68, 436 A.2d at 155 (1981), "The concept of equal protection ... demands that uniform treatment be given to similarly situated parties....

---

**6.** The Sovereign Immunity Act, 42 Pa.C.S.A. § 8528(b).

**7.** Appellees also assert that the act impermissibly classifies tort claimants against the government in that those who settle first or file their claims first may exhaust the total fund available for all claimants. This claim is without merit.

Firstly, the case where there are multiple claims against the government arising from the same transaction is not that different, practically speaking, from a case where there are multiple claims against a private tortfeasor, and the defendant has only limited insurance coverage.

Secondly, once claims have been filed, it is within the power of the trial court to regulate all claims, including settlements, administratively, such that all claimants receive a segment of the total fund proportionate to their injury. Further, should the trial court fail or refuse to coordinate such claims, relief may be sought in this Court.

If classifications are drawn, then the challenged policy must be reasonably justified." What counts as justification will depend upon which of three types a classification belongs to, what the governmental interest is in promulgating the classification, and the relationship of that interest to the classification itself. *James v. SEPTA*, 505 Pa. at 145, 477 A.2d at 1306. Different types of governmental interests and different degrees of closeness of relationship between the interest and the classification are required depending upon the type of classification involved.

The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. *Id.* Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

In *James*, the statute in question required that persons suing the transit authority for personal injuries bring their suit within six months, whereas persons suing non-governmental tortfeasors were permitted to bring their suits at any time within two years. In order to determine whether this differential access to the courts is constitutionally permissible, we first examined the nature of the right involved in the case. The most protected rights, fundamental rights, are those which have their source, explicitly or implicitly, in the Constitution. *James v. SEPTA, Id.*, 505 Pa. at 146, 477 A.2d at 1306, citing *Plyler v. Doe*, 457 U.S. 202, 216, n. 15, 102 S.Ct. 2382, 2394, n. 15, 97 L.Ed.2d 786 (1982). Because the right implicated in *James*—access to the courts—is specifically limited by Art. I, § 11 of the Pennsylvania Constitution, we concluded that it is not a fundamental right.

We held, however, that James had an important interest in access to the courts and, therefore, that the statute in question should be examined pursuant to an intermediate standard of review. This standard of review requires that the government interest be an "important" one; that the classification be drawn so as to be closely related to the objectives of the legislation; and that the person excluded from an important right or benefit be permitted to challenge his exclusion on the grounds that in his particular case, denial of the right or benefit would not promote the purpose of the classification. *James v. SEPTA, Id.* 505 Pa. at 147, 477 A.2d at 1307. We concluded the analysis in *James* by upholding the statute on the grounds that the statute promoted an important governmental interest the realization of which was closely related to the classification.

In the present case, an almost identical analysis is applicable. No fundamental rights are implicated because the right to a full recovery in a tort suit brought against the Commonwealth or its political subdivisions is expressly limited by our interpretation of Article III, Section 18 and Article I, Section 11 of the Pennsylvania Constitution (permitting the legislature to limit recovery against governmental units). Strict scrutiny of the classification, therefore, is not required.

Again, as in *James,* although the right to a full recovery in cases brought against the Commonwealth has been constitutionally limited, that right is, nevertheless, generally an important right and its limitation by way of governmental classification requires a heightened scrutiny of the validity of the classifying statute. The governmental interest, preservation of the public treasury as against the possibility of unusually large recoveries in tort cases, is, self-evidently, an important governmental interest. Furthermore, this important interest is closely related to the classification established by the statutory scheme: only persons who might recover against the Commonwealth or its subdivisions are affected. Finally, just as in *James,* since only those who might recover against the Commonwealth are affected ad-

versely by the classification and since all persons who fall into this classification will promote the governmental purpose by their inclusion, there is no requirement for any hearing process to determine whether some persons should not be included in the classification. The Political Subdivision Tort Claims Act, therefore, is constitutional.

The order of the Court of Common Pleas of Philadelphia is reversed.

NIX, C.J., joins the majority opinion and files a separate concurring opinion.

HUTCHINSON, J., joins Part I of the majority opinion and joins in a separate concurring opinion by ZAPPALA, J.

ZAPPALA, J., joins in Part I of the majority opinion and files a concurring opinion joined by HUTCHINSON, J.

LARSEN, J., files a dissenting opinion which PAPADAKOS, J., joins.

PAPADAKOS, J., files a dissenting opinion joined by LARSEN, J.

NIX, Chief Justice, concurring.

I join the opinion of the majority. I do, however, wish to note that I appreciate the concern of the concurring justices. Mr. Justice Flaherty is unquestionably correct in concluding that the right of access represents a fundamental right and that its denial should require the application of the "heightened scrutiny" standard of review. Whether every limitation upon that right is to be accorded the same status as an absolute denial of access or where to draw the line pose much more difficult questions. In this matter, the question fortunately is academic because, under either standard, the result is the same.

Suffice it to say that, in my judgment, not all legislative restrictions which impact upon access to the courts will require the "heightened scrutiny" analysis. *See, e.g., Kras*

*v. United States*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Moreover, I do not understand the majority to disagree with this view.

ZAPPALA, Justice, concurring.

While I join in Part I of the majority opinion regarding the constitutional authority to limit tort recovery against the Commonwealth and concur with the result, I once again disagree with the majority's determination that an intermediate or "heightened scrutiny" standard of review is appropriate. *See James v. SEPTA*, 505 Pa. 137, 149, 477 A.2d 1302, 1308 (1984) (Concurring Opinion of Zappala, J.) As in *James*, I would hold that the proper standard of review is the rational basis test. Under the present facts, this test was met.

HUTCHINSON, J., joins in this concurring opinion.

LARSEN, Justice, dissenting.

In the instant case, section 8553 of the Political Subdivision Tort Claims Act (the Act), 42 Pa.C.S.A. § 8553, requires that seventy-two claimants, including the estates of seven persons who were killed in the gas explosion and many who were seriously injured and maimed, seek recompense for their injuries from a paltry pool of $500,000.00, the maximum aggregate liability that may be imposed against the City of Philadelphia, or any other political subdivision in this Commonwealth, for damages arising out of the same cause of action.

For the reasons stated in Justice Papadakos' dissenting opinion, which I join, I believe the Act clearly and palpably violates Article I, section 11 and Article III, section 18 of the Pennsylvania Constitution. Additionally, I repeat the objection voiced in my dissenting opinion in *Carroll v. County of York*, 496 Pa. 363, 437 A.2d 394 (1981) that political subdivisions are not "the Commonwealth" and that, therefore, Article I, section 11 of the Pennsylvania Constitution by any interpretation could not provide a basis for legislation designed to limit the liability of political subdivi-

sions. 496 Pa. at 379–381, 437 A.2d at 402–403 (dissenting opinion by Larsen, J., joined by Flaherty and Kauffman, JJ.). As I stated in *Carroll:*

> The majority opinion glosses over the complex issues in this case by the simple expedient of equating "political subdivisions" with "the Commonwealth." The majority hones in on the second proviso of Article I, § 11 ("suits may be brought *against the Commonwealth* in such manner and in such cases as the legislature may by law direct.") and, on *exceedingly* meager authority, concludes "[s]urely the Legislature's authority 'to choose cases in which the Commonwealth should be immune' encompasses political subdivisions." At 496 Pa. 367, 437 A.2d 396. By use of this legal slight-of-hand, relying *only* on a case which states that municipal corporations are agents of the state, *City of Pittsburgh v. Commonwealth,* 468 Pa. 174, 360 A.2d 607 (1976), the majority concludes that "the conferring of tort immunity upon political subdivisions is within the scope of the legislature's authority pursuant to Article I, Section 11." 496 Pa. at 367, 437 A.2d at 396.
>
> The second sentence in Article I, § 11 provides: "Suits may be brought *against the Commonwealth* in such manner, in such courts and in such cases as the legislature may by law direct." (emphasis added); it does *not* say "suits may be brought against the Commonwealth *and its subdivisions,* etc." It is quite obvious that this proviso is *irrelevant* to the instant case. Whatever authority this proviso may grant to the General Assembly to enact legislation conferring immunity upon the Commonwealth (*see Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978)), it has no bearing on the authority of the General Assembly to confer immunity upon political subdivisions.
>
> A political subdivision is most certainly not "the Commonwealth". . . .

*Id.,* 496 Pa. at 379–380, 437 A.2d at 402–403. Also, *compare Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868

(1973) *with Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).

Furthermore, I continue to adhere to the view that the classifications established by the Act based solely on the status of the defendant are arbitrary and violate equal protection principles embodied in the Constitutions of this Commonwealth and of the United States. *James v. SEPTA,* 505 Pa. 137, 149–152, 477 A.2d 1302, 1308–09 (1984) (Larsen, J., dissenting). Article I, section 26 of the Pennsylvania Constitution, adopted May 16, 1967, provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." And the equal protection clause of the Fourteenth Amendment directs that no state shall make or enforce any law which shall "deny to any person within its jurisdiction the equal protection of the laws."

As I stated in *Carroll, supra:*

*serious* equal protection problems are raised by legislative classification based *solely* on the identity and/or status of one of the parties. [As] this Court's recent decisions have uniformly and unequivocally stressed, there are *"no reasons whatsoever"* for immunities that are strictly status-based. *Ayala v. Philadelphia Board of Public Education, supra,* 453 Pa. at 592, 305 A.2d 877 (1973) (emphasis added). We further stated in *Ayala,* per Justice Roberts, "we must agree with Chief Justice Traynor of the California Supreme Court that 'the rule of governmental immunity is an anachronism, *without rational basis....*'" *Id.,* 453 Pa. at 592, 305 A.2d 877.[9]

---

[9] Thus, even under the traditional "rational basis" test (i.e., whether a classification is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to a legitimate legislative purpose. *See Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441 (1971) *and Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975)) a classification based *solely* on status is in a grave constitutional predicament. An argument might, moreover, be legitimately advanced that the standard of review of this legislation should be "strict scrutiny", *Baltimore & Ohio Railroad Co. v. Com-*

monwealth Dep't of Labor and Industry, 461 Pa. 68, 83 n. 11, 334 A.2d 636 n. 11 (1975), as "it is fundamental to our common law system that one may seek redress for every substantial wrong." *Ayala v. Philadelphia Board of Public Education, supra* 453 Pa. at 594, 305 A.2d 877 quoting *Niederman v. Brodsky,* 436 Pa. 401, 403, 261 A.2d 84, 85 (1970).

*Carroll v. County of York, supra* at 496 Pa. 381–382, 437 A.2d at 403–404.

This Court subsequently decided in *James v. SEPTA, supra,* that an intermediate or heightened standard of review was the appropriate standard for reviewing the Act in light of the "important," but not "fundamental," interests at stake. In my view, regardless of whether we employ a "strict scrutiny," "heightened scrutiny," or "rational basis" standard of review, the classifications created by the Act based solely on the identity and status of the tort-feasor are arbitrary, do not bear a fair and substantial relation to any *legitimate* state purpose, and deny to the claimants the enjoyment of their civil rights and equal protection of the laws under the state and federal constitutions. *See Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 306–326, 466 A.2d 107, 119–130 (1983) (Larsen, J., dissenting, joined by Flaherty, J.)

PAPADAKOS, J., joins this dissenting opinion.

PAPADAKOS, Justice, dissenting.

Once again this Court has embroiled itself in a continuing drama over whether the Commonwealth and its political subdivisions are immune from suit for injuries they cause and, if they are, whether they can limit the amount of damages recoverable against them for such injuries. *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981); *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980); *Dubree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978); *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978); *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973); *Commonwealth v. Berks County,* 364 Pa. 447, 72 A.2d 129 (1950); *Merchants Warehouse v. Gelder,* 349 Pa.

1, 36 A.2d 444 (1944); *Monongahela Navigation Company v. Coons,* 6 Watts and Sergeant 101 (1843).

At issue is the interpretation of two sections of our Constitution which the majority continues to interpret to vest authority in the Legislature to decide for itself the extent to which the Commonwealth and its political subdivisions shall be immune from suits and to the extent it shall be subject, if at all, to pay damages for injuries caused.

Because I disagree with the majority's conclusions on both questions at hand, I dissent.

Article I, Section 11 of the Pennsylvania Constitution provides:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

This section, as presently worded, has been part of the organic law of this Commonwealth since 1790. In my opinion, this Section can be interpreted properly only if it is read in its entirety, for only then can a reading be made that will give consistent effect to the whole section.

As a starting point, I refer to the eloquent comments of the late Mr. Justice Manderino, whose dissenting views in *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973), best summarize my views on Article I, Section 11's interpretation:

Section 11 has two sentences and they must be read together ...

The first sentence of Section 11 is unequivocal. It protects everyone—without exception—for all injuries. It specifically speaks of injuries to *lands, goods, person* or *reputation.* The first sentence says that everyone *shall have remedy* by due course of law—it does not say that sometimes there is a remedy and sometimes not.

The sentence states that right and justice shall be administered *without ... denial*—it does not say justice can be denied sometimes and sometimes not. The first sentence of Section 11 must be read before proceeding to sentence two, and that first sentence could not have been written in more absolute terms even by one possessing divine rights. Can we possibly destroy the absolutely plain meaning of sentence one by an interpretation of sentence two, which requires a reach outside the people's *written constitution?* The *written constitution* contains no mention of immunity for the state—or inherent rights of the state—or inalienable rights of the state—or indefensible rights of the state. It is thus necessary for the majority to begin its interpretation of sentence two by reaching *outside the written constitution.* Just where that reach extends, we are not told.

If sentence two of Section 11 can be reasonably interpreted without destroying the clear meaning of sentence one or doing violence to the purpose of the entire Article in which the Section appears, we are bound in the name of reason to so interpret sentence two of Section 11. The only reasonable meaning of sentence two, in context, must be that it gives the legislature the right to implement procedurally the substantive rights granted so absolutely in the first sentence of Section 11.

*Brown,* 453 Pa. at 582–583, 305 A.2d at 876.

Everyone is guaranteed a remedy for his injuries and an open court in which to air the grievances. *Commonwealth ex rel. Duff v. Keenan,* 347 Pa. 574, 33 A.2d 244 (1943); *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147 (1853). The first sentence of Article I, Section 11 sets forth that a complete scope of remedies shall be available to individuals for all harms done to them. This first sentence represents a constitutional limitation against the Legislative Power and guarantees that no governmental action can lessen in any way the rights of the people to seek redress for injuries suffered. No exceptions are contained in this sentence, and the guarantee is mandatory. This provision is also self-exe-

cuting. It can take effect without the aid of legislation, and being contained in the "bill of rights" is by its very nature self-executing. This right, reserved by the people from the general government, does not require the Legislature to make it effective. The use of "shall" indicates that the provisions are effective without legislation. See, *Commonwealth by Shapp v. National Gettysburg Battlefield Tower, Inc.*, 454 Pa. 193, 311 A.2d 588 (1973); *O'Neill v. White*, 343 Pa. 96, 22 A.2d 25 (1941); *Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327 (1903), and Article I § 25 of the Pennsylvania Constitution which declares that everything in Article One "is excepted out of the general powers by government and shall forever remain inviolate."

Sentence two, however, has caused a raging judicial and legislative debate over the last twenty years. Its proper relation to sentence one is crucial to its proper application to the issues raised in this case.

This Court has, at times, ruled that this sentence created a basis for immunity from suits against the Commonwealth and its political subdivisions. *Brown v. Commonwealth*, 453 Pa. 566, 305 A.2d 868 (1973); *Commonwealth v. Orsatti*, 448 Pa. 72, 292 A.2d 313 (1972); *Conrad v. Commonwealth, Department of Highways*, 441 Pa. 530, 272 A.2d 470 (1971); *Meagher v. Commonwealth*, 439 Pa. 532, 266 A.2d 684 (1970); *Bannard v. New York State Natural Gas Corp.*, 404 Pa. 269, 172 A.2d 306 (1961); *Stouffer v. Morrison*, 400 Pa. 497, 162 A.2d 378 (1960); *Commonwealth v. Berks County*, 364 Pa. 447, 72 A.2d 129 (1950). At other times we have ruled that this section creates no immunity from suits in favor of the Commonwealth or its subdivisions. *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978) (abolishing sovereign immunity); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) (abolishing local governmental immunity); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abolishing parental immunity); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (abolishing charitable immunity).

Currently in vogue is the following interpretation of the meaning of sentence two of Article One, Section 11:

> We now believe that this constitutional provision does not forbid judicial abrogation of the doctrine. Rather the Constitution is ... neutral—it neither requires nor prohibits sovereign immunity. It merely provides that the presence or absence of sovereign immunity shall be decided in a nonconstitutional manner....

*Mayle* 479 Pa. at 400, 388 A.2d at 716.

This reading would vest authority in the Legislature to raise the shield of immunity at will. In effect, the permissive language of the second sentence is being read as a qualification of the mandatory limitation placed on the legislative power by the first sentence. I am troubled by this interpretation for various reasons.

First, Article I of our Constitution is a *Declaration of Rights*. Each of the 26 Sections is concerned with withholding rights from the State.

> To isolate one sentence out of twenty-six sections in the Declaration of Rights and say that it should be interpreted to protect the rights of the state—not the people—is ludicrous and violates all reasonable principles of construing written language in proper context.

*Brown*, 453 Pa. at 581, 305 A.2d at 875 (Dissent of Mr. Justice Manderino).

Both sentences of Section 11 must be read in a consistent manner which preserves for the people the various rights retained by them in the first sentence. Sentence two, which is framed in permissive language ("may" instead of "shall"), must be read in such a manner, then, that it does not qualify the imperative of Sentence 1, but in a way so that it complements that sentence. Had the second sentence read:

> Suits *shall* be brought against the Commonwealth *only* in such manner, in such courts and in such cases as the Legislature *shall* by law direct....

I would agree that Legislative Power existed on the subject of its immunity, but as the language exists, the only reasonable meaning of the second sentence, in context, is that the people have given the Legislature the option of creating a separate procedure for the litigation of cases where it or its subdivisions are involved. If it chooses not to legislate, however, that does not mean that right of redress does not exist, because that substantive right is declared by the first sentence. The courts are open and can litigate all forms of actions between parties as long as the Legislature does not indicate that its cases should be handled in another manner. In this respect, I view the Act of September 28, 1978, P.L. 788 No. 152, 1 Pa.C.S. § 2310, as the Legislature's desired method of proceeding against the Commonwealth in eight types of cases. Similarly, in the Political Subdivisions Tort Claims Act of November 26, 1978, P.L. 1399, 42 Pa.C.S. §§ 8541–64, the Legislature has indicated the manner of proceedings against the Commonwealth's Political Subdivisions in eight areas. But neither act can raise immunity as to other areas not covered by the acts because no such power is vested in the Legislature. To the extent that either of those acts attempts to create a shield of immunity for injuries caused, I would hold those sections to be unconstitutional.

This Court has already recognized that the people have not written immunity into the Constitution. *Mayle, Ayala, Carroll.* It is not a power delegated to the elected representatives. How is it, then, that anyone can reason that the section is "neutral" on the issue? If the power is not specifically delegated by the people, it is withheld and cannot be exercised by the government under the guise of "neutrality." The current interpretation of "neutrality" is judicial double-talk, with which I disagree. We have always held that the constitution is not a grant of power to the Legislature; rather, it is a limitation of the powers exercised by the Legislature. *Luzerne County v. Morgan,* 263 Pa. 458, 107 A. 17 (1919); *Collins v. Commonwealth,* 262 Pa. 572, 106 A. 229 (1919); *Commonwealth v. Herr,* 229 Pa.

132, 78 A. 68 (1910); *In Re: Likins*, 223 Pa. 456, 72 A. 858 (1909); *Appeal of Lewis*, 67 Pa. 153 (1870); *Page v. Allen* 58 Pa. 338 (1868); *Commonwealth v. Hartman*, 17 Pa. 118 (1857); *Norris v. Clymer*, 2 Pa. 285 (1845). The limitations on the powers of the Legislature are not to be determined from the general body of law, but from the Constitution itself. *Erie & N.E.R. Co. v. Casey*, 26 Pa. 287 (1856).

Furthermore, as Chief Justice Thompson stated in *Page v. Allen*, 58 Pa. 338, 346 (1868), "The expression of one thing in the constitution, is necessarily the exclusion of things not expressed. This I regard as especially true of constitutional provisions, declaratory in their nature. The remark of Lord Bacon, 'that, as exceptions strengthen the force of a general law, so enumeration weakens, as to things not enumerated,' expresses a principle of common law applicable to the constitution, which is always to be understood in its plain, untechnical sense."

Nothing is clearer to me than the plain, untechnical language of Section 11. It simply guarantees that all people shall have remedies for their injuries without exception. Sentence two merely gives the Legislature the option of creating special Courts, Boards and Tribunals to handle controversies where they or their instrumentalities are parties. One need only review the Consolidated Statutes of the Legislature to find the countless Boards, Commissions, Agencies and Courts created for this very purpose (for example, see the Administrative Code, Eminent Domain Code, Liquor Code, Municipalities Planning Code, various City, Borough, Township, and County Codes, Vehicle Codes, and Jurisdiction of the Commonwealth Court). It is also interesting to note that at about the time this Section became part of the Constitution, the Legislature was known to authorize, by statute, the appearance of the Attorney General before this Court to defend actions against the Commonwealth and to authorize the appropriation of monies to pay for damages owed by the Commonwealth, *without limitation.*

What is even clearer is the direct, mandatory language of Article III, Section 18 which provides, in pertinent part:

Other than Workmen's Compensation, in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property....

The majority concludes that since the Legislature has the authority to raise a shield of immunity against itself for injuries the Commonwealth causes, thereby reducing the recovery to nothing, it can likewise condition recovery to specific amounts for suits it permits, as it has attempted to limit here to $500,000.00 in the aggregate.[1]

This conclusion is reached by reference to the concerns and debates of the Drafters of the 1874 Constitutional Convention which drafted Article III, Section 18 as a reaction against legislation favorable to common carriers which limited damages recoverable against them. Additionally, the majority assumes that the Drafters of the Constitution might have imagined that the Commonwealth and its subdivisions were immune from suit in 1874 for injuries to persons or property; therefore, the Framers had no occasion to consider the effect of Article III, Section 18 on damages recoverable against the Commonwealth.

First, while the debates of the Constitutional Convention of 1874 and commentaries on that convention are interesting, they are irrelevant to an interpretation of a clear, unambiguous, mandatory, self-executing restraint on legislative power. This is one of the oldest Rules of Construction in the Commonwealth, having been stated and restated by this Court over and over again from 1825 to the present. In *Eakin v. Raub*, 12 Sergeant and Rawle 330 (1825), Justice Gibson noted that the Constitution contains whole will of the body from which it emanates and that the

---

1. 42 Pa.C.S. § 8553(b) provides: Amounts recoverable—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.

debates are of no value in determining that. See also, *Commonwealth v. Mann,* 5 Watts and Sergeant 403 (1843).

Resort to the debates of the convention may show the views of the individual members and the reasons for their votes:

> [b]ut they give us no light as to the views of the large majority who did not talk, much less of the mass of our fellow citizens whose votes at the polls gave that instrument the force of fundamental law. We think it safe to construe the Constitution from what appears upon its face. *Commonwealth v. Balph,* 111 Pa. 365, 3 A. 220 (1886); see also *County of Cumberland v. Boyd,* 113 Pa. 52, 4 A. 346 (1886); *Commonwealth ex rel. Margiotti v. Lawrence,* 326 Pa. 526, 193 A. 46 (1937).

By Article III, Section 18, the people, in clear, unambiguous language, reserved unto themselves the right to obtain for injury sustained a remedy by due course of the law.

> The people have withheld power from the legislature and the courts to deprive them of that remedy, or to circumscribe it so that a jury can only give a pitiful fraction of the damage sustained. Nothing less than the full amount of pecuniary damage which a man suffers from an injury to him in his lands, goods or person, fills the measure secured him in the Declaration of Rights. As well might it be attempted to defeat the whole remedy as a part ...
> A limitation of recovery to a sum less than the actual damage is palpably in conflict with the right to remedy by due course of law.

*Passenger Railway Co. v. Boudrou,* 92 Pa. 475 (1880).

No limitation or exception is contained by the language of the Section, except for Workmen's Compensation cases, and no other exception should be written into the Section by this Court.

Secondly, it is a mistake to assume that the Commonwealth was considered immune from suit because such a conclusion ignores history. Extensive legislation already existed in 1874 permitting suits against the Commonwealth and its subdivisions in eminent domain cases, for contract

breaches, escheat matters, and other matters where the attorney general was authorized to represent the Commonwealth, without a limitation on the damages recoverable.

Third, the majority's interpretation of this Section could easily be read to protect only those actions which the Legislature or Constitutional Drafters were aware of in 1874. By implication, an application of this holding would permit the Legislature to limit damages in all public and private actions recognizable after 1874. Actions by or against women, product liability claims, malpractice cases, automobile accidents, nuclear power, gas, and electricity accidents, all unknown to the law in 1874, could be limited by such an interpretation.

I view this Section as a broad mandate by the people to the Legislature directing it not to meddle in the people's right to recover against those responsible for injuring them. Article III, Section 18 wiped clean all statutory enactments in conflict with it when the Section became part of the Constitution in 1874 and stands as a bulwark, *until the people otherwise direct,* against all present and future attempts by the Legislature to fritter away the rights of the people. We do a great disservice to the people, whose trust we have accepted, to interpret this Section in any way but in their favor.

Instead, this Court now lets stand, upon no rational basis, a damage limitation which creates a different measure of damages recoverable depending upon whether the tortfeasor is a private individual, a political subdivision, or the Commonwealth. Apart from this Equal Protection of the Laws violation, the damage limitation creates a fund apportionable among all victims of a single tortious episode whether they be one or one hundred or more. As applied to this very litigation, 72 injured parties will be forced to share an aggregate $500,000, which will be insultingly inadequate to compensate many of them for their losses. It is alleged that such a limit on damages is a reasonable exercise by the Legislature to prevent depletion of the public funds, but this argument was rejected in *Ayala* and *Mayle.* This view

also ignores the reality that these undercompensated victims of catastrophic proportions will quickly exhaust their meager recovery and become charges upon the very Commonwealth that should have adequately compensated them in the first place. It is thus illusory to boast that a limitation of damages protects the public treasury.

The majority's present course is regrettable, because it ignores the duty entrusted to this Court of protecting rights reserved by the people, for the people, and instead creates rights in favor of the creature of the people, at the expense of the people, who in actuality, are the only sovereign under our form of government. Accordingly, I dissent.

LARSEN, J., joins this dissenting opinion.