IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hayley Freilich, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 327 C.D. 2022 |
| | : | Argued: March 6, 2023 |
| Southeastern Pennsylvania | : | |
| Transportation Authority | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                        FILED: July 6, 2023


          Hayley Freilich (Plaintiff) appeals from the judgment entered in the
Philadelphia County Court of Common Pleas (trial court) in her favor and against
the Southeastern Pennsylvania Transportation Authority (SEPTA).  We affirm.

          On October 2, 2017, Plaintiff was struck by a SEPTA bus while in the
crosswalk on Broad Street at Vine Street in downtown Philadelphia.  The bus struck
Plaintiff with the front passenger axle and ran over her left foot.  Emergency medical
personnel transported Plaintiff to Hahnemann Hospital.  As a result of her injuries,
Plaintiff underwent a partial left foot amputation that has required multiple
additional surgeries and significant medical care, and will require medical care for
the rest of her life.

On October 20, 2017, Plaintiff retained Kline & Specter, P.C. (Law Firm) to represent her in litigation against SEPTA. Plaintiff entered into a contingent fee agreement with the Law Firm under which the firm would receive one-third of any recovery, plus the reimbursement of expenses. A basis for the representation was that the Law Firm would challenge the constitutionality of Section 8528(b) of the Judicial Code[1] limiting SEPTA's liability to the $250,000.00 cap provided therein, asserting that the cap violates article I, section 6[2] and article I, section 11 of the Pennsylvania Constitution.[3] *See* Reproduced Record (RR) at 517a.

On June 6, 2018, Plaintiff filed a one-count Complaint in the trial court alleging that SEPTA was negligent when its bus struck her at the intersection of Broad and Vine Streets. *See* RR at 30a-38a.[4] On July 16, 2018, SEPTA filed an

---

[1] 42 Pa. C.S. §8528(b). Section 8528(b) states: "**(b) Amount recoverable.--**Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate." *See also Iovan v. Nestel*, 150 A.3d 571, 573 (Pa. Cmwlth. 2016) ("SEPTA is a Commonwealth agency for purposes of sovereign immunity. *Nardella v. Southeastern Pennsylvania Transportation Authority*, 34 A.3d 300, 303 (Pa. Cmwlth. 2011).").

[2] Pa. Const. art. I, §6. Article I, section 6 states, in pertinent part: "Trial by jury shall be as heretofore, and the right thereof remain inviolate."

[3] Pa. Const. art. I, §11. Article I, section 11 states:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

[4] On June 27, 2018, Plaintiff filed an Application for Extraordinary Relief Under 42 Pa. C.S. §726 in the Supreme Court asking that Court to exercise plenary jurisdiction over her constitutional challenges to Section 8528(b)'s statutory cap on damages. On October 15, 2018, by **(Footnote continued on next page…)**

2

Answer and New Matter asserting, *inter alia*, all defenses and immunities, and limitations available to the Commonwealth in the Judicial Code. *See id.* at 42a-43a. Nevertheless, on July 20, 2018, SEPTA made a formal offer to settle all of Plaintiff's claims for the $250,000.00 cap on damages contained in Section 8528(b) of the Judicial Code. *See id.* at 500a. Plaintiff rejected the offer as part of her constitutional challenge to the statutory cap. *See id.* at 517a.

A jury trial limited to the determination of compensatory damages was scheduled for November 1, 2021, because SEPTA had admitted liability.[5] However, in light of the COVID-19 pandemic and the time and expense associated with a trial, on October 29, 2021, the parties entered into a Stipulated Jury Verdict for Plaintiff (Stipulated Verdict). *See* RR at 463a-68a. The damages awarded were $500,000.00 for past economic loss; $500,000.00 for future economic loss; and $6,000,000.00 for past and present non-economic losses. *See id.* at 464a, 467a. The parties acknowledged that they would file post-trial motions as if it was a jury verdict. *See id.* at 466a.

On November 5, 2021, Plaintiff filed a Motion for Delay Damages. *See* RR at 469a-84a. Based on the $7,000,000.00 Stipulated Verdict, Plaintiff sought delay damages totaling $892,979.45. *See id.* at 477a. On November 8, 2021, SEPTA filed a Motion to Mold the Verdict alleging that the Stipulated Verdict should be molded to conform to the statutory cap of Section 8528(b) of the Judicial Code. *See id.* at 507a-10a. On December 20, 2021, SEPTA filed an Answer to Plaintiff's Motion for Delay Damages again invoking the application of Section 8528(b), and

_____

per curiam order, the Supreme Court denied Plaintiff's Application. *See Freilich v. Southeastern Pennsylvania Transportation Authority* (Pa., No. 70 EM 2018, filed October 15, 2018).

[5] On October 29, 2021, SEPTA filed its trial/hearing exhibits in the trial court designated as D1 through D13. On November 1, 2021, Plaintiff filed her trial/hearing exhibits in the trial court designated as P-1 through P-26.

based on its July 20, 2018 settlement offer in the amount of that statutory cap. *See* RR at 486a-506a.

That same day, Plaintiff filed an Answer and Memorandum of Law in opposition to SEPTA's post-trial Motion to Mold the Verdict. *See* RR at 511a-848a. In her response, Plaintiff relied on the late Chief Justice Baer's Concurring Opinion in *Zauflik v. Pennsbury School District*, 104 A.3d 1096, 1134 (Pa. 2014) (Baer, J., concurring), in which he asserted that the constitutional challenge to the statutory cap for local political subdivisions[6] was without merit, but "that through a properly developed record, a victim may be able to establish that the statutory damages cap constitutes an onerous procedural barrier to the jury trial right in violation of [a]rticle I, [s]ection 6.[7]"

---

[6] *See* Section 8553(b) of the Judicial Code, 42 Pa. C.S. §8553(b) ("**(b) Amounts recoverable.--**Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.").

[7] *See also Grove v. Port Authority of Allegheny County*, 218 A.3d 877, 892 (Pa. 2019) (Baer, J., concurring):

> Nearly five years have passed [since the opinion in *Zauflik* was filed], and the General Assembly has not amended the relevant statutes to increase the cap on damages recovered against local governments or the Commonwealth to account for all realities, including simple inflation, that have occurred over the many decades since the statutory caps were enacted. I respect that it is the role of the Legislature, which has the greater capacity to evaluate complex questions of public policy, to establish limits on the liability of local governments and the Commonwealth in negligence cases. *See Zauflik*, 104 A.3d at 1123 (providing that "to the extent genuine questions might be raised regarding the amount of the cap, we note that such questions require detailed study and analysis of all relevant policy factors in a complicated balancing act that is properly addressed to the General Assembly") (emphasis removed).

**(Footnote continued on next page…)**

To this end, the Law Firm obtained the reports of a number of experts to demonstrate Plaintiff's injuries, her resulting medical and surgical care, and her surgical prognosis; her functional deficits and her rehabilitative prognosis; her mental health following the partial amputation of her foot; a life care plan describing her medical and personal care costs over her lifetime; and the inflation-adjusted value of Plaintiff's future personal and medical care costs. *See* RR at 217a-44a. The Law Firm advanced $72,170.83 for these expert reports. *See id.* at 518a. The Law Firm spent $1,492.27 for medical records; $1,585.00 for trial technology services; and $957.14 for court filings, service, and messenger fees. *See id.* In addition, under the contingent fee agreement, the Law Firm will be paid $83,333.33 due to the liability cap. *See id.* at 530a. Deducting these litigation expenses and counsel fees from the $250,000.00 gross recovery, Plaintiff would only net $90,462.00 in compensation. *See id.*

---

However, it is the role of this Court to protect our citizens' constitutional rights.

Accordingly, I again respectfully suggest that the Legislature consider the facts of this case, as well as those that have preceded it where its constituents have suffered devastating loss through the negligence of a local government or the Commonwealth and were denied fair compensation because of application of the statutory caps. I urge the General Assembly to take swift action to remedy the situation by increasing the statutory limits. In the event that the Legislature does not so act, this Court may be faced with a developed challenge to the statutory caps as violative of the constitutionally guaranteed right to a jury trial. If a plaintiff properly constructs a record to establish that the statutory caps place an onerous burden on his or her right to a jury trial, this Court may be compelled to strike the cap, which could leave the Commonwealth or the local governments exposed to full liability if, and until, new legislation is passed. [(Footnote omitted).]

Moreover, Plaintiff's health insurer, Aetna Health, Inc. (Aetna), has paid $520,668.42 for health care resulting from the accident. *See* RR at 557a-600a. Under the Certificate of Coverage setting forth Aetna's rights and responsibilities, Aetna "retains the right for repayment of the full cost of all benefits" that it has paid, and has "an assignment of the proceeds of any settlement, judgment, or other payment received by [her] to the extent of the full cost of all benefits provided by [Aetna]." *Id.* at 639a, 674a. The Certificate of Coverage also grants Aetna "a first-priority lien" on any recovery from a third party, and Plaintiff must pay "as the first priority from any recovery, settlement, or judgment . . . any and all amounts due [Aetna] as reimbursement for the full cost of all benefits" that Plaintiff received because of injuries for which a third party is responsible. *Id.* at 640a, 675a. Thus, any net recovery that Plaintiff would receive under the statutory cap could be recovered by Aetna.

Finally, Plaintiff also received $7,967.31 in short-term disability benefits, and $31,383.31 in long-term disability benefits from The Hartford under a disability insurance policy. *See* RR at 787a-90a. Under the policy, The Hartford reserved the right to reimbursement "to the fullest extent allowed by statute and customary practice." *See id.* at 791a-843a.

On February 11, 2022, the trial court heard argument on the post-trial motions. *See* RR at 924a-63a. On March 4, 2022, the trial court issued an Order and Memorandum Opinion granting SEPTA's Motion to Mold the Verdict to comply with Section 8528(b) of the Judicial Code and denying Plaintiff's Motion for Delay Damages. On March 28, 2022, Plaintiff filed a Praecipe for Judgment, *see* RR at 964a-65a, and judgment for Plaintiff in the amount of $250,000.00 and against

SEPTA was entered on the trial court's docket. *See id.* at 27a-28a. On April 4, 2022, Plaintiff filed the instant timely appeal to this Court.[8] *See id.* at 28a, 966a-67a.

In this appeal,[9] Plaintiff claims that the trial court erred in molding the Stipulated Verdict to the statutory cap in Section 8528(b) of the Judicial Code because it violates her right to a jury trial under article I, section 6 as the entire judgment will be consumed by costs, fees, and insurance reimbursement claims. Likewise, she contends that the trial court erred in molding the Stipulated Verdict to the statutory cap in Section 8528(b) because it violates her right to a remedy under article I, section 11 as the entire judgment will be consumed by costs, fees, and insurance reimbursement claims. We do not agree.

As outlined in the trial court's opinion filed in this matter, in *Zauflik*, the Supreme Court considered, *inter alia*:

> (3) Does the [Section 8553] liability cap violate [appellant's] right to jury trial guaranteed by [a]rticle I,

---

[8] That same day, Plaintiff filed another Application for Extraordinary Relief Under 42 Pa. C.S. §726 in the Supreme Court again asking that Court to exercise plenary jurisdiction over her constitutional challenges to Section 8528(b)'s statutory cap on damages. On August 10, 2022, by per curiam order, the Supreme Court again denied Plaintiff's Application. *See Freilich v. Southeastern Pennsylvania Transportation Authority* (Pa., No. 20 EM 2022, filed August 10, 2022).

[9] As the Supreme Court has explained: "As questions regarding the interpretation of the Rules of Civil Procedure are questions of law, our standard of review is *de novo* and our scope of review is plenary. *American and Foreign Ins*[*urance*] *Co. v. Jerry's Sport Center, Inc.*, [2 A.3d 526, 532-33 (Pa. 2010)]." *Marlette v. State Farm Mutual Automobile Insurance Company*, 57 A.3d 1224, 1230 (Pa. 2012). Thus, "[i]n analyzing the propriety of molding a verdict, our scope of review is plenary. *See Baker v. AC and S*, 755 A.2d. 664, 667, n.4 (Pa. 2000), [(citing)] *Phillips v. A-Best Products Co.*, 665 A.2d 1167 (Pa. 1995)[)]. Our standard of review requires us to examine the lower tribunal's ruling for an abuse of discretion or error of law. *Id.* (citations omitted)." *Darwish v. Einspahr* (Pa. Super., No. 2588 EDA 2019, filed September 24, 2020), slip op. at 8 (footnote omitted); *see also Marlette*, 57 A.3d at 1230 ("[A] plaintiff's recovery of delay damages under Pa.R.Civ.P. 238 is limited to the amount of the legally-recoverable molded verdict as reflected by the insurance policy limits.").

[s]ection 6 of the Pennsylvania Constitution where [the school district] did not challenge the verdict's excessiveness yet the liability cap eviscerated the verdict by reducing [appellant's] recovery by over 96%?

* * *

(5) Does the liability cap violate the open courts provision of [a]rticle I, [s]ection 11 of the Pennsylvania Constitution by forcing a more than 96% remittitur of the jury's verdict and therefore denying [appellant] full redress of her injuries?

*Zauflik*, 104 A.3d at 1103.

With respect to the former article I, section 6 claim, as explained by the Supreme Court:

> Even if it is assumed that the right to a jury trial in negligence cases filed against governmental entities existed in the "heretofore" described in [a]rticle I, [s]ection 6, such that it must "remain inviolate" now, the full-blown jury trial appellant demanded and received was not impeded by the damages cap. What was affected was the ultimate recovery post-verdict, which was not a function of the trial here being by jury. As stated, that effect of the cap exists in all such cases—whether resolved by judgment motion, jury trial, bench trial, or negotiated settlement—but the cap did not alter the availability, or contours of, a jury trial, any more than a jury trial against a judgment-proof defendant could be said to impair the jury trial right. Appellant has not met her burden of establishing that the [Judicial Code's] damages cap clearly, palpably and plainly violates [a]rticle I, [s]ection 6.

*Zauflik*, 104 A.3d at 1133.[10]

---

[10] *See also Griffin v. Southeastern Pennsylvania Transportation Authority*, 757 A.2d 448, 452-53 (Pa. Cmwlth. 2000), wherein this Court explained:

**(Footnote continued on next page…)**

8

Plaintiff asserts that her inability to ultimately obtain *any* financial recovery based on her injuries flowing from SEPTA's admitted negligence translates into an article I, section 6 violation based on her purported inability to adequately prepare for trial. *See* Plaintiff's Brief at 9 ("[Plaintiff] argues that Section 8528 violates the right to a jury trial . . . on the basis that the cap rendered her case uneconomical to reach trial because of the expensive and complex features of modern litigation, including expert retention, trial costs, attorney fees, and third-party insurance claims. Because a gross recovery . . . under the cap would produce no or *de minimis* return[s . . . ,] Section 8528 placed onerous practical impediments to preparing her case for trial.").

However, assuming as true the fees and costs filed by Plaintiff in the trial court, she was, in fact, able to adequately prosecute the instant matter. *See* RR at 518a (outlining the cost of prosecuting Plaintiff's claims such as $72,170.83 for a

> Lastly, [the plaintiff] argues that because of inflation, the statutory cap of $250,000 enacted in 1978 has been eroded to merely a $100,000 value today and that to obtain the $250,000 in today's dollars, the cap should be increased to $625,000. SEPTA responds that it is for the legislature to modify its cap and not for this [C]ourt to do so. We agree because if the legislature were to set the cap today at $250,000 given that it would not be violative of the constitution, as held above, the mere passage of time will not render the amount of the cap unconstitutional due to the influence of inflation. Presumably the legislature was aware of the effects of inflation and could have opted for some cap indexed to inflation. That the legislature did not index the cap to inflation but set forth an absolute dollar amount does not render the cap unconstitutional. As observed in *Smith*[ *v. City of Philadelphia*, 516 A.2d 306, 309-10 (Pa. 1986)], the purpose of the cap was to protect the public fisc; with the passage of time, and the consequent decrease in the value of the absolute dollar figure, simply because the $250,000 cap better promotes this purpose today than in 1978 is no reason to declare it unconstitutional.

number of expert reports; $1,492.27 for medical records; $1,585.00 for trial technology services; and $957.14 spent for court filings, service, and messenger fees). Moreover, as outlined above, the Supreme Court specifically rejected a claim based on a diminution in recovery as a basis for the trial court to find a violation of Plaintiff's right to a jury trial as guaranteed by article I, section 6.

Likewise, with respect to the article I, section 11 claim, the Supreme Court observed:

> The General Assembly . . . acted within its constitutional authority provided in [a]rticle I, [s]ection 11, when it adopted legislation re-establishing governmental immunity, and providing for the limited waiver of that immunity, in Chapter 85 of the Judicial Code. . . . Chapter 85 includes all provisions regarding the Commonwealth's immunity, 42 Pa. C.S. §§8521-8528, as well as the immunity of "local parties," 42 Pa. C.S. §§8541-8564. As this Court held in *Smith*[ *v. City of Philadelphia*, 516 A.2d 306, 309-10 (Pa. 1986)], the General Assembly also properly acted within its [s]ection 11 authority when it adopted the damages cap in actions against local governments in Section 8553 of the [Judicial Code.] Appellant has not advanced any convincing argument why *Smith* should be overruled, or that the cap clearly, palpably, and plainly violates [s]ection 11.

*Zauflik*, 104 A.3d at 1128. *See also Smith*, 516 A.2d at 309 ("If the legislature may abolish a cause of action, surely it may also limit the recovery on the actions which are permitted. To hold otherwise would be, in our view, to grant with one hand what we take away with the other. Such a result would be absurd, or at least, unreasonable. We conclude, therefore, that [a]rticle I, [s]ection 11 should not be read to prohibit the Legislature from enacting a limit on the tort liability of its political subdivisions.").

Plaintiff also contends that her inability to ultimately obtain ***any*** financial recovery based on her injuries flowing from SEPTA's admitted negligence translates into an article I, section 11 violation. *See* Plaintiff's Brief at 10 ("In [Plaintiff's] case, Section 8528 fails intermediate scrutiny as the cap is no longer 'substantially related' to achieving the twin governmental interests underpinning the [Judicial Code] of providing compensation to injured people and protecting the public purse. For [Plaintiff], the [Judicial Code] only protects the government. She obtains no compensation at all.").

However, "[t]his Court, as an intermediate appellate court is bound to follow the majority opinions of our Supreme Court . . . ." *In re Ross*, 109 A.3d 781, 785 (Pa. Cmwlth.), *aff'd sub nom. In re Substitute Nomination Certificate of Ross*, 101 A.3d 1150 (Pa. 2014). *See also Griffin*, 757 A.2d at 451 ("[W]e, as an intermediate appellate court are bound by the decisions of the Pennsylvania Supreme Court and are powerless to rule that decisions of that Court are wrongly decided and should be overturned. *See, e.g.*, *Nunez v. Redevelopment Authority of the City of Philadelphia*, [609 A.2d 207, 209 (Pa. Cmwlth. 1992)] ('as an intermediate appellate court, we are bound by the opinions of the Supreme Court.').").

Indeed, as this Court has explained:

[I]t was well settled that the decisions of the Supreme Court were regarded as the law to be followed by inferior courts whatever the view of the latter may be as to their wisdom or justness.

\* \* \*

As our judicial system has been restructured by the 1968 Pennsylvania Constitution and the implementing [predecessor to Section 8 of the Act of July 9, 1976, P.L. 586, No. 142], we are unable to discern in these provisions any expressed intent upon the part of the electorate or the

11

General Assembly to depart from this well-established rule which lends uniformity and certainty to the law but allows sufficient flexibility for change by the highest court, but only the highest court, in our judicial system.

*Lovrinoff v. Pennsylvania Turnpike Commission*, 281 A.2d 176, 177-78 (Pa. Cmwlth. 1971) (citations omitted).[11]

Likewise, as the Pennsylvania Superior Court has stated:

As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. *Foflygen v. Zemel*, [615 A.2d 1345, 1353 (Pa. Super. 1992)]. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court. *Malinder v. Jenkins Elevator & Machine Co.*, [538 A.2d 509, 513 (Pa. Super. 1988)]. As we have also said in an earlier case:

It may be, as has been suggested, that the Supreme Court, as the policy making court in this Commonwealth, will choose to make it easier to toll the statute of limitations. In the meantime, this Court, being an error

---

[11] *See also* Pa. Const. art. V, §1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace."); Pa. Const. art. V, §2 ("The Supreme Court [] shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth."); Pa. Const. art. V, §10(a) ("The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace . . . ."); Section 501 of the Judicial Code, 42 Pa. C.S. §501 ("The [Supreme C]ourt shall be the highest court of this Commonwealth and in it shall be reposed the supreme judicial power of the Commonwealth."); Section 502 of the Judicial Code, 42 Pa. C.S. §502 ("The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the [C]ourt, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722. The Supreme Court shall also have and exercise . . . [a]ll powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law[, and t]he powers vested in it by statute, including the provisions of this title.").

> correcting court, will affirm trial court decisions which are in accord with principles of law adopted by prior appellate court decisions.
>
> *Aivazoglou v. Drever Furnaces*, [613 A.2d 595, 600 (Pa. Super. 1992)].

*Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 801 (Pa. Super. 1999).

In this case, Plaintiff is asserting that the trial court erred in failing to adopt the late Chief Justice Baer's minority position in his Concurring Opinions in *Zauflik* and *Grove*, and in failing to determine the appropriate criteria upon which Plaintiff may rely "to establish that the statutory damages cap constitutes an onerous procedural barrier to [her] jury trial right in violation of [a]rticle I, [s]ection 6." *Zauflik*, 104 A.3d at 1134 (Baer, J., concurring). *See* Plaintiff's Brief at 39 ("Given this factual landscape, it is apparent that [Plaintiff's] circumstances trigger the concerns identified in the *Zauflik* and *Grove* concurrences and fall within the conceptual framework developed in the *Parker* [*v. Children's Hospital of Philadelphia*, 394 A.2d 932, 938 (Pa. 1978),] and *Mattos* [*v. Thompson*, 421 A.2d 190 (Pa. 1980)] decisions.");[12] Plaintiff's Brief at 54 ("[I]t cannot be said that Section 8528(b) is substantially related to any purported governmental [interest] in compensating victims while also protecting the public purse. At this point . . . the cap only protects the Commonwealth. Compensation is out the window. Accordingly, the cap violates the Remedies Clause under intermediate scrutiny as applied in *Yanakos* [*v. UPMC*, 218 A.3d 1214, 1219-20, 1233-37 (Pa. 2019).").

---

[12] Plaintiff's reliance on the Supreme Court's analyses in *Parker* and *Mattos* is misplaced. Those cases involved the constitutionality of the relevant former medical malpractice statutes and not, as in this case, the Judicial Code provisions voluntarily waiving the Commonwealth's sovereign immunity in the expressly limited circumstances.

13

However, assuming that the numbers in Plaintiff's filed exhibits are accurate, both the trial court and this Court, as an intermediate appellate court, are bound by the Majority Opinion in *Zauflik* in which the Supreme Court rejected the argument that the mere reduction in recovery is a basis upon which the foregoing constitutional violations may be found. In short, the trial court did not err in granting SEPTA's Motion to Mold the verdict based on the Majority Opinion in *Zauflik*.[13]

We are mindful of the harsh result that flows from our decision, and we are empathetic to Plaintiff's desire to recover the stipulated damages for her unquestionably tragic injuries. Nevertheless, as in *Zauflik*, this Court is compelled to affirm the trial court's order molding the verdict to conform to the constitutionally valid provisions of Section 8528(b) of the Judicial Code unless and until a Majority Opinion of the Pennsylvania Supreme Court provides the trial court and this Court with a basis upon which to do otherwise. *See Zauflik*, 104 A.3d at 1128-29 ("As this Court held in *Smith*, the General Assembly also properly acted within its [s]ection 11 authority when it adopted the damages cap in actions against local governments in Section 8553 of the [Judicial Code]. 516 A.2d at 309-10. [The plaintiff] has not advanced any convincing argument why *Smith* should be overruled, or that the cap clearly, palpably, and plainly violates [s]ection 11."); *id.* at 1133 ("[T]he cap did not alter the availability, or contours of, a jury trial, any more than a jury trial against a judgment-proof defendant could be said to impair the jury trial **right**. [The plaintiff] has not met her burden of establishing that the [Judicial Code's] damages cap clearly, palpably and plainly violates [a]rticle I, [s]ection 6." (emphasis in original)).[14]

---

[13] In this appeal, Plaintiff does not claim or develop an argument demonstrating that the trial court erred in denying her Motion for Delay Damages.

[14] *See also Zauflik*, 104 A.3d at 1133, wherein the Supreme Court stated the following: **(Footnote continued on next page…)**

After reviewing the record, Plaintiff's brief and oral argument, and the relevant case law, we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned opinion of Judge James C. Crumlish, III. Accordingly, we affirm the trial court's order on the basis of his opinion in the matter of *Freilich v. Southeastern Pennsylvania Transportation Authority* (C.P. Phila., No. 180600401, filed February 3, 2022).

 

 

_____

MICHAEL H. WOJCIK, Judge

---

Pennsylvania courts have struggled with the difficult questions raised in this appeal-and the attendant policy implications-since the very beginnings of our common law system. The facts here are tragic, involving a school student who suffered grievous injuries caused by the uncontested negligence of the school district's employee. ***But, the circumstances are not unprecedented, and the lower courts did not err in relying on our prior cases to uphold the legislation at issue, as against the present constitutional challenges. Moreover, the conclusion that the General Assembly is in the better position than this Court to address the complicated public policy questions raised by the larger controversy has substantial force.*** Accordingly, we uphold the limitation on damages recoverable under Section 8553(b) of the [Judicial Code], and therefore affirm the order of the Commonwealth Court.

(Emphasis added.)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hayley Freilich,                         :
                                         :
                 Appellant               :
                                         :
        v.                               :   No. 327 C.D. 2022
                                         :
Southeastern Pennsylvania                :
Transportation Authority                 :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>July</u>, 2023, the order of the Philadelphia Court of Common Pleas is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

0056_ORDER_AND_OPINION_FILED

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| HAYLEY FREILICH, | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : No. 180600401 |
| SOUTHEASTERN PENNSYLVANIA | : |
| TRANSPORTATION AUTHORITY, | : Control No. 21111457 |
| | : 21111633 |
| Defendant. | : |

## ORDER

AND NOW, this 3rd day of February, 2022, upon consideration of the Motion of Plaintiff

Hayley Freilich for Delay Damages and Defendant SEPTA's opposition thereto, and the Motion

of Defendant SEPTA for Post Trial Relief in the form of molding of the verdict to comply with

the statutory damages cap of $250,000.00 pursuant to 42 Pa. C.S.A. §8528 and Plaintiff's

Freilich's opposition thereto, it is hereby ORDERED and DECREED that Defendant SEPTA's

Motion is GRANTED for the reasons stated in the court's Memorandum Opinion attached hereto

and filed herewith.  It is further ORDERED that Plaintiff's Motion for Delay Damages is

DENIED for the reasons in the court's Memorandum Opinion.

BY THE COURT:

_____
Crumlish, III, J.

180600401-Freilich Vs Southeastern Pennsylvania Transportati

18060040100130

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

HAYLEY FREILICH,

                Plaintiff,

      v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,

              Defendant.

: CIVIL ACTION
:
:
:
:
:
: No. 180600401
:
: Control Nos. 21111457
:            21111633
:
:
:
:

## MEMORANDUM OPINION

### I.    INTRODUCTION

Presently before the court is Plaintiff Hailey Freilich's Motion for Delay Damages in the amount of $892,979.45 on the Stipulated Jury Verdict amount of $7 million dollars in this matter and Defendant SEPTA's Motion to Mold the Verdict in accordance with the Statutory "cap" on damages in actions brought against governmental entities under the Pennsylvania Tort Claims Act, 42 Pa. C.S.A. §8553(b). SEPTA opposes Delay Damages on the ground that six weeks after Plaintiff filed the Complaint, SEPTA offered Plaintiff the full amount of the $250,000 statutory cap that SEPTA asserted that she was entitled to recover against it. Even assuming no offer to settle, SEPTA would oppose the delay damages because such damages are subject to its Motion to mold the verdict. Plaintiff Freilich opposes the molding of the verdict, not because the motion lacks a legal basis but because she asserts that the cap violates or constrains her fundamental Constitutional rights so severely as to nullify her rights, making the application of the cap to her case unconstitutional. Plaintiff's arguments are grounded principally upon the possibility

Pennsylvania Supreme Court may viate the application of the cap as applied to the facts of this action relying on , *inter alia*, that then Justice, now Chief Justice, Baer recognized as dicta in *Zauflik v. Pennsbury School District*, 629 Pa. 1, 64, 104 A.3d 1096, 1134 (2014) that a "properly developed record" might "establish that the statutory damages cap constitutes an onerous procedural barrier to the jury trial right in violation of Article I, Section 6" of the Pennsylvania Constitution. As an example of such a barrier, the concurrence in *Zauflick* cites *Application of Smith*, 112 A.2d 625 (Pa. 1955), where a statute and local rule of court required that claims under a certain dollar amount proceed through compulsory arbitration, the cost of which, in the form the required payment to appeal from the compulsory proceeding was payment of the arbitrators' fee, exceeded the amount of the recovery sought. Thus, Plaintiff invites the court to determine here whether the record before this trial court evinces the type of procedural barrier that, in Plaintiff's view under the concurrence and argued majority of justices who at one time or another have agreed with the argument, compels this court to now declare Supreme Court precedent as to the cap inapplicable and reach a substantive ruling by this court that the imposition of the cap in this case "unconstitutional."

Plaintiff has compelling facts on her side, now subject to a stipulated verdict—through no fault of her own, a SEPTA driver, who immediately admitted fault, caused her a catastrophic injuries, with lifelong pain and suffering and with a life-altering permanent loss of her foot, extensive medical bills and projected overwhelming and extensive future medical costs. The parties stipulated that a jury verdict in this case was $7 million dollars, which verdict this court entered into the record. For purposes of this case before the Court, that number would be the indisputably a full and fair award and deference to a full presumed full and fair consideration of the Jury and of all the factors otherwise recoverable as a matter of law,

2

In opposition to SEPTA's Motion for Post-Trial Relief to Mold the Verdict, Plaintiff presented hundreds of pages of records reflecting medical and insurance liens on any recovery she might obtain. Plaintiff also outlines in their brief the amounts that were expended to prepare the case for trial and this resulting verdict, which amounts were set forth by counsel at the oral argument on the record. (A copy of the transcript of the argument is attached to this Opinion). Defendant SEPTA did not dispute that Plaintiff incurred these costs; we will consider them as accurate.

The court is mindful of the profound economic inequity of the recovery provided under the application of the limitations of Tort Claims Act to the recovery Plaintiff <u>might</u> similarly have against a private Plaintiff against a non-governmental tort feasor , a harsh reductive calculation that is plainly untethered to the undisputed catastrophic injuries to Plaintiff. However, regretfully, as the Supreme Court majority noted in *Zauflik*:

> Successful plaintiffs are often limited in their ability to recover the full amount of a jury's award for many different reasons—a defendant may simply be judgment-proof, for example—but this practical reality has nothing to do with the plaintiff's right to seek to have the merits of her cause determined by a jury, rather than some other process.

629 Pa. at 62, 104 A.3d at 1132. The question presented in Plaintiff's opposition to the Defendant's Motion to Mold the Verdict is positioned as whether the facts in the record here in this matter are so unique as to distinguish Pennsylvania Supreme Court precedent addressing the statutory cap and to permit this court to make decision abrogating existing constitutional decisions of the appellate courts as a matter of law in this particular case addressing the motions before it.

II.      Plaintiff's Challenge to the Cap as a Basis to Mold the Verdict

Plaintiff contends that she has substantively met all the factual and legal challenges posed in Chief Justice Baer's concurrence in *Zauflik* by outlining the undisputed substantial costs of

3

bringing this matter to a successful verdict and demonstrating the resulting negative recovery that would be available to her under the application of the cap after the incursion of those costs (presumed by the verdict to be reasonable) and the health care cost liens attached to any recovery. Procedurally, *Zauflik* differs from this case insofar as the expenditures in question arose from pre-trial preparation and the trial before a jury on damages of this undisputed facts of Plaintiffs claims. In addition, the record in *Zauflik* contained evidence that the defendant maintained available substantial commercial liability insurance coverage (albeit not for motor vehicle accidents), which Plaintiff argued the defendant could obtain ultimately *in futuro* to address the payment of damages to accident victims. The record as to the availability of commercial healthcare insurance and the potential dire impact to governmental entities of uncapped verdicts was not fully developed nor easily addressed in the context of an adversarial proceeding. ("Whether the statements in the briefs of twenty-eight interested amici are factually correct, they are a cautionary tale that this constitutional challenge implicates core public policy questions, concerning both the propriety and the amount of a statutory damages cap, that the political branches are better positioned to weigh and balance." 629 Pa. at 45, 104 A.3d at 1122).

Plaintiff further points to the recent concurrence of Chief Justice Baer in *Grove v. Port Authority of Allegheny County*, 655 Pa. 535, 218 A.3d 877, (2019), noting the legislative failure to rectify the concerns expressed in *Zauflik* as to the potential that the Supreme Court might be faced with a case in which a plaintiff might "establish that the statutory caps place an onerous burden on his or her right to a jury trial, [whereupon] this Court may be compelled to strike the cap, which could leave the Commonwealth or the local governments exposed to full liability if, and until, new legislation is passed." 218 A.3d at 892. Three justices joined in this concurrence.

4

Additionally, Plaintiff notes that Justice Todd previously joined in Chief Justice Baer's concurrence in *Zauflik*, inferring that a court majority favors her position.

Plaintiff outlines in their Argument without substantive objection by Defendant the tremendous costs for expert services, medical records and trial technology in the brief (*Id.* at p. 3 and on the record at the hearing), which costs are asserted to "burden plaintiff's ability to present an issue to a jury" as they represent an "onerous condition" which, along with counsel's fee, "make the jury trial right practically unavailable." *Zauflik* concurrence, 104 A.3d at 1134 *citing Application of Smith,* 112 A.2d 625 (Pa. 1955).

III.    ANALYSIS

Plaintiff's constitutional challenge asserts that the specific factual record here that demonstrates the requisite "onerous condition" contemplated in *Application of Smith.* However, the cases in which the Court actually invalidated a provision on this basis all involved <u>procedural</u> impediments precluding the bringing of a case to a jury. *Application of Smith* involved a compulsory arbitration scheme that required payment of a substantial fee to perfect an appeal to a jury trial. In *Matos v. Thompson,* 491 PA. 385, 421 A.2d 190 (1980) the Supreme Court determined that an arbitration process for medical malpractice claim initially upheld as constitutional was fraught was so many interminable delays as to become unconstitutional in practice. More recently, in *Yanakos v. UPMC,* 655 Pa. 615, 218 A.3d 1214 (2019), the Supreme Court considered the validity of a statute of repose in medical malpractice cases that operated as a bar to suit after seven years, which exempted claims beyond seven years brought against medical device manufacturers. Plaintiffs in *Yanakos* challenged the provision under the remedies clause of the PA Constitution in Article 1, section 11. The Court consensus inherent in plurality is that the right to a remedy in a suit against a **private individual** involved at least an

5

important, if not fundamental, right, the denial of which in the one situation did not meet the law's purported justification under an intermediate scrutiny analysis (required in the case of a important right). However, the Court went out of its way to distinguish lawsuits against the Commonwealth or government entities, where the remedies clause did not confer a fundamental right. The Court's analysis informs the inquiry here. Although the Plaintiff did not advance a right to jury trial argument, it is clear that the limitation in the statute of repose was a procedural impediment to obtaining a jury trial, not a post-verdict cap on damages.

The Supreme Court in *Zauflik* specifically considered and rejected at the time the argument that the cap unconstitutionally impaired the right to a jury trial guaranteed by the Pennsylvania Constitution in Article 1, section 6, the principal argument that Plaintiff makes here. The Court held: "The damages cap does not present a condition or restriction on appellant's right to have a jury hear her case; rather, the burden lies in the limited amount of recovery allowed, and that is obviously not the same thing." 629 Pa. at 62, 104 A.2d at 1132. Then Justice Baer "join[ed] the finely crafted majority opinion in its entirety." *Id.* at 64, 104 A.2d at 1134. The subsequent decision in *Grove* does not alter this holding in any way—*Grove* did not involve a challenge to the constitutionality of the cap, but rather whether the trial court properly charged the jury on Plaintiff's contributory negligence. While the verdict, even considering the reduction for Plaintiff's negligence exceeded the cap, the question before the Court was propriety of granting the defendant a new trial based upon an insufficient jury instruction. The cap issue was neither briefed nor argued by the parties. This court cannot resolve the issue and facts specifically before it on the basis of a case in which the claims made here which were not before the Supreme Court, even in the face of Chief Justice Baer's concurrence and express serious concerns about legislative inaction. Moreover, the Chief Justice

6

and the Court, regrettably, has not provided specific guidance to this trial court as to what constitutes a "properly constructed" record or a "fully developed challenge."[1]

This court cannot wade into the debate about whether the disposition of Plaintiff's constitutional challenge is more conclusively a matter for the court or the legislature. As a trial court charged simply with the resolution of the facts before it in accordance with existing law under principles of *stare decisis*, this court can only discern the law and precedent applicable to the legal issues in front of it apply them and adjudicate the matter accordingly. At this stage, despite the number of well-reasoned concurrences, the Supreme Court in *Zauflik* has resolved every Constitutional challenge raised herein against the Plaintiff's position, in a case involving remarkably similar claims of catastrophic injuries and drastic reduction of the verdict to conform to the limitations of the cap.

The court agrees that the record demonstrates that the imposition of the cap to this plaintiff in light of her catastrophic injuries is profoundly unfair if not unconscionable as applied here. However, unfairness does not necessarily equate as a matter of law with an unconstitutional exercise of legislative power or an impediment to the right to try the case to a jury.

---

[1] Chief Justice Baer recognized the possibility of plaintiffs incurring prohibitively discouraging costs, based on thirteen years as a trial judge, that counsel in a complex litigation might be required incur to "retain multiple liability and damages experts who are, in turn, mandated to develop their theories to a reasonable degree of certainty, provide detailed expert reports, sit for depositions, and often provide live testimony at the cost of tens of thousands of dollars." The Chief Justice does not guide us on how a governmental defendant's "concession" to liability at the outset of the litigation alters this landscape or how this general notion of the cost of litigation three decades into the twenty-first century justifies a trial court engaging in policy considerations underlying the Constitutionally authorized limitation on governmental immunity adopted in the Tort Claims Act.

Plaintiff's actuarial expert ably demonstrates the equivalence of the cap amount (of $250,000) in today's dollars ($897,600), a number that SEPTA does not dispute. As compelling as the Plaintiff's arguments are here and recognizing the inflationary diminution of the effect of soaring healthcare expenses, especially in light of Plaintiff's catastrophic injuries, this trial court is not a legislative or policy-making body and cannot substitute its judgment for that of the legislature or controlling law. In *Yanakos*, Chief Justice Baer joined in the dissent of Justice Wecht (also joined by Justice Saylor) in which he noted: "it is not this Court's role to upend duly enacted legislation simply because we might sometimes deem it imperfect or unwise" and rejects the notion that "Article I, Section 11 of the Pennsylvania Constitution, ... provides that every person who suffers an injury 'shall have remedy by due course of law[.]'" 218 A.3d at 1238. Fundamentally, the Court is bound by the structures in the analysis of the Supreme Court majority in *Zauflik* as to the validity of the damages cap (as stated in part earlier in this opinion):

> The damages cap does not present a condition or restriction on appellant's right to have a jury hear her case; rather, the burden lies in the limited amount of recovery allowed, and that is obviously not the same thing. Successful plaintiffs are often limited in their ability to recover the full amount of a jury's award for many different reasons—a defendant may simply be judgment-proof, for example—but this practical reality has nothing to do with the plaintiff's right to seek to have the merits of her cause determined by a jury, rather than some other process. This Court has struck down onerous procedural barriers to the exercise of the jury trial right, but that is quite a different matter from a substantive limit on the damages ultimately recovered—following a full-blown jury trial. *See, e.g., Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980) (statutory arbitration scheme first upheld in *Parker* later determined to cause lengthy delays which present onerous conditions and restrictions which impose oppressive burden on that right). 629 Pa. at 61-62, 104 A.3d at 1132.

*Zauflik* considered virtually every one of the arguments that Plaintiff makes here. The court does not find the facts in the sufficient to release this court from the precedential weight of *Zauflik*.

On this record, this trial court has a prescribed role, a role that does not permit it, however heart wrenching or compelling a circumstance, to engage in judicially "coloring outside the lines," criticizing the law-making body, engaging in political philosophic disagreements, applying new judicial standards of review or usurping the proper exercise of the ultimate responsibilities of the appellate courts. For those reasons and following applicable precedent, the court must follow the applicable legislative restrictions and mold the verdict in accordance with SEPTA's Motion for Post-Trial Relief. Plaintiff's Motion for Delay Damages would lead to an unenforceable recovery in excess of the cap. The court will enter an order granting SEPTA's Motion to Mold the Verdict and Denying Plaintiff's Motion for Delay Damages.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hayley Freilich, :
                    Appellant :
                                  :
          v. : No. 327 C.D. 2022
                                  : ARGUED: March 6, 2023
Southeastern Pennsylvania :
Transportation Authority :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**CONCURRING OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED: July 6, 2023**

I concur in the result reached by the majority in its well-reasoned opinion because we are, without doubt, bound by the decisions of our Supreme Court, including *Zauflik v. Pennsbury School District*, 104 A.3d 1096 (Pa. 2014). Nevertheless, I believe that the undisputed averments concerning Ms. Freilich's actual damages, as well as the costs and liens burdening any recovery against SEPTA, clearly establish that the statutory limitation on recoverable damages against state agencies amounts to a violation of the Remedies Clause of the

Pennsylvania Constitution[1] in Ms. Freilich's case, as well as the right to trial by jury[2] for most plaintiffs who suffer similar catastrophic injuries.[3]

As the majority notes, in *Zauflik*, when our Supreme Court upheld the constitutionality of the similar $500,000 cap[4] on damages against municipal agencies, Justice (later Chief Justice) Baer, joined by (now Chief) Justice Todd and (then) Justice Stevens, in a right to counsel challenge, opined:

> While there is no evidentiary record concerning the costs and fees incurred to prosecute the instant litigation, I believe that a victim of a political subdivision's negligence in a complicated case may be able to establish that the costs and fees of litigating the claim precluded counsel from accepting the case, thereby denying the victim the right to present the case to a jury.
>
> . . . .
>
> In accord with the [*Application of* ]*Smith*[, 112 A.2d 625 (Pa. 1955)] analysis, assuming an evidentiary proffer that $500,000 would not cover costs and fees incurred in

---

[1] Pa. Const. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.").

[2] Pa. Const. art. I, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate.").

[3] While this case clearly demonstrates that the statutory cap poses a real threat of violating the right to counsel in any case involving catastrophic injuries, I do not believe we could give Ms. Freilich individual relief on that basis since this is an *as-applied* challenge, and Ms. Freilich did, in fact, obtain highly competent and effective counsel. Her attorney's credible averment that his firm accepted her representation in order to make this constitutional challenge does not show that she actually suffered a deprivation of the right to counsel, only that, ironically, pursuing this case on her behalf defeated the purpose of the pursuit.

[4] Obviously, the fact that the cap at issue here is only half that considered in *Zauflik* serves only to strengthen the constitutional claims asserted here.

BBL - 2

pursuing complex personal injury litigation, it would appear that the statutory cap presents an "onerous procedural barrier" to an injured plaintiff's guaranteed right to a jury, and, thus, violates Article I, Section 6[ of the Pennsylvania Constitution]. We must, however, await the development of a record before so holding.

. . . .

Accordingly, it is my hope that this case will serve as an impetus for legislative action to increase the $500,000 limitation on recovery from political subdivisions before this Court is constrained to analyze this issue on a record developed in accord herewith.

*Zauflik*, 104 A.3d at 1134-36 (Baer, J., concurring). Essentially, these concurring Justices, and perhaps even those in the majority, exhibited sound judicial restraint, deferring to the General Assembly's preeminent role in such matters. However, nine years have passed and the General Assembly has turned a deaf ear to Justice Baer's prescient comments and his urging of our legislature to correct the wrong to which he alluded. At this point, it would appear clear that it will not do so of its own accord at any time in the foreseeable future. I would urge our Supreme Court to analyze both the deprivation of the right to trial by jury and the deprivation of rights under the Remedies Clause illustrated by the undisputed averments presented here and suspend the cap until the General Assembly takes meaningful and adequate corrective action to remedy this constitutional wrong. Such an approach serves the dual purpose of fulfilling the obligation of the judiciary to protect and preserve our Constitution while according deference to the prerogative of the legislature to craft a statutory remedy.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita